STATE OF CONNECTICUT *v.* WILLIAM BARRETT
(12018)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued June 4—decision released July 30, 1985

*Robert L. Genuario,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Daniel A. Lyons, Jr.,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The dispositive issue on this appeal is whether the trial court erred in refusing to suppress oral statements made by the defendant during the course of custodial interrogation. The defendant, William Barrett, was convicted, after a trial to the jury, of sexual assault in the first degree, in violation of General Statutes § 53a-70 (a), unlawful restraint in the first degree, in violation of General Statutes § 53a-95 (a), and possession of less than four ounces of a cannabis-type substance, in violation of General Statutes

§ 19-481 (c).[1] Upon entry of judgment, he was sentenced to a total effective term of imprisonment of nine to eighteen years. He appeals from this conviction.

The jury could reasonably have found the following facts. On the evening of October 23, 1980, the victim, a young woman of twenty, was waiting for a bus on a street corner in New Haven. The defendant, William Barrett, accompanied by another man, offered her a ride in his car. Since the victim recognized the defendant as a former neighbor and high school classmate whom she had known for eight years, she accepted his offer. Instead of driving to her sister's house as she had requested, however, the defendant drove to a secluded area in Wallingford, where the two men took turns sexually assaulting her. Upon returning to New Haven following the assault, the victim immediately contacted the police. She reported the details of the

[1] At the time in question, General Statutes § 53a-70 (a) provided: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

At the time in question, General Statutes § 53a-95 (a) provided: "UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury."

At the time in question, General Statutes § 19-481 (c) provided: "PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. . . . (c) Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marihuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized by this chapter, may be fined not more than one thousand dollars, or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense may be imprisoned not more than five years, or fined not more than three thousand dollars or be both fined and imprisoned."

General Statutes § 19-481 (c) was transferred to § 21a-279 (c) in 1983.

assault and identified the defendant as one of her assailants. He was taken into custody by New Haven police at approximately 11:30 p.m. that same night, and held until Wallingford police transported him to the Wallingford police station early the next morning.

During the trial, the defendant moved to suppress oral statements which he had made shortly after his arrival at the Wallingford police station on the ground that his fifth amendment right to counsel had been violated. Following a suppression hearing, the trial court denied the motion.

The defendant raises three issues on appeal. He claims that the trial court erred: (1) in denying the defendant's motion to suppress his oral statements made to the police during custodial interrogation; (2) in denying his motion to suppress summaries of the interrogation made by two nontestifying police officers; and (3) in refusing to permit cross-examination of the complainant concerning her prior sexual activity with the defendant. We find error on the defendant's first claim, and do not reach the other two claims.[2]

The defendant claims that the oral statements he made to the Wallingford police should have been suppressed because he had invoked his right to counsel under the fifth and fourteenth amendments to the

---

[2] We do not reach the defendant's second claim because our decision today that the defendant's oral statements are inadmissible for constitutional reasons necessarily makes inadmissible the police summaries of the same statements. We thus have no reason to decide whether they would be inadmissible on independent grounds.

We do not reach the defendant's third claim because, although it presents a question of some significance, it is unclear from the record that the issue was raised properly below. The transcript reflects confusion over which question was before the trial court, and no exception to the court's ruling was entered by the defendant as required by Practice Book § 288. Consequently, since this issue was not "distinctly raised at the trial"; Practice Book § 3063; we decline to consider it on appeal.

United States constitution.[3] He maintains that he effectively asserted this right when he expressly refused to give the police a written statement in the absence of counsel. The defendant at trial sought unsuccessfully to have the trial court suppress the testimony of a policeman describing the substance of his oral statements.

Established principles of law govern the permissible role of police during custodial interrogations. *Smith* v. *Illinois,* 469 U.S. 91, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984); *Edwards* v. *Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378, reh. denied, 452 U.S. 973, 101 S. Ct. 3128, 69 L. Ed. 2d 984 (1981); *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Once a suspect has invoked his right to counsel, all questioning must cease and may not be resumed in the absence of counsel unless the accused both initiates the discussion; *Edwards* v. *Arizona,* supra, 484–85; and knowingly and intelligently waives the right to counsel which he had previously invoked. *Smith* v. *Illinois,* supra, 493. Our resolution of the defendant's claim, therefore, requires a two-step inquiry. We must determine: (1) whether the defendant had in fact invoked his right to counsel; and (2) if so, whether he subsequently waived it.

In taking the first step of our inquiry, we must focus on the defendant's request for counsel itself and the circumstances leading up to this request. *Smith* v. *Illinois,* supra, 96–99. The relevant evidence was provided by two police officers who testified at the suppression hearing. Their testimony revealed that, shortly after the defendant's arrival at the Wallingford police

---

[3] The defendant did not bring this claim under article first, § 8, of the Connecticut constitution, nor did he cite any Connecticut cases in support of his position. Consequently, we do not consider any Connecticut constitutional claim in this case.

station, the police advised him of his *Miranda* rights,[4] and asked him if he would give a statement concerning the assault. The defendant immediately replied that he would not give a written statement without his attorney present, although he was willing to answer questions orally. Without further inquiry, the police proceeded to interrogate him in the absence of counsel and to elicit an incriminating statement from him.

An hour later, having discovered the malfunctioning of a tape recorder used without the defendant's knowledge during the first interrogation, the police conducted a second interrogation. They again advised the defendant of his *Miranda* rights, and he again stated that he would not give a written statement without an attorney, but would answer questions orally. At the end of this interrogation, a police officer asked the defendant if he would be willing to put the oral statement into writing, and he again refused to do so without an attorney.[5]

---

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), holds that "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

[5] During the trial, subsequent to the suppression hearing, a police officer testified that the police had also asked the defendant if he would reduce his oral statement to writing at the end of the first interrogation, and that the defendant had made the same response: that he would put nothing into writing without his attorney.

The trial court, in ruling on the defendant's motion to suppress his oral statements, impliedly found that the defendant had requested counsel.[6] We agree. The record is clear that the defendant had requested counsel not once, but on at least three separate occasions. At no time did the police attempt to determine whether an attorney was coming or, indeed, even whether the defendant had succeeded in contacting one.

The record is also clear that the police understood this request for counsel. The two police officers who brought the defendant back to the interrogation room for the second questioning informed the detective commander that the defendant had refused to give a written statement without his attorney. Reports of the interrogations filed by three participating police officers and later introduced into evidence at the suppression hearing all note the defendant's request to have an attorney present before he put anything into writing. In addition, the defendant made several phone calls in the presence of police.[7] Although the police officers stated that they had no idea to whom the calls were made, one of them admitted that it was his "interpretation" that the defendant had contacted an attorney, and that the attorney was on the way to the station. If the police had been uncertain about the tenor of the defendant's request, they had a duty to clarify his intention rather than proceed to question him. *State* v. *Acquin*, 187 Conn. 647, 672–75, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed.

[6] The trial court noted the defendant's refusal to give a written statement without an attorney during its discussion of the defendant's waiver of his rights.

[7] It is unclear from the transcript at precisely what point the phone calls were made. They were definitely made prior to the second interrogation, and a fair reading of the transcript would support a finding that they were made prior to the first interrogation.

2d 1411 (1983); see *Smith* v. *Illinois,* supra, 95–96.[8]
Instead, the record shows that the police made no
attempt at clarification. They interrogated the defend-
ant twice within a short period of time in the absence
of counsel, and even actively attempted to change his
mind about waiting for his attorney before he reduced
his oral statements to writing.[9]

The fact that the defendant attached his request for
counsel to the making of a written statement does not
affect the outcome of this first step of our inquiry. No
particular form of words has ever been required to
trigger an individual's fifth amendment protections;
*Miranda* v. *Arizona,* supra, 444–45; nor have requests
for counsel been narrowly construed. See *Smith* v.
*Illinois,* supra, 92–94; *Edwards* v. *Arizona,* supra, 479,
484–85. The defendant's refusal to give a written state-
ment without his attorney present was a clear request
for the assistance of counsel to protect his rights in his
dealings with the police. *Fare* v. *Michael C.,* 442 U.S.
707, 719, 99 S. Ct. 2560, 61 L. Ed. 2d 197, reh. denied,
444 U.S. 887, 100 S. Ct. 186, 62 L. Ed. 2d 121 (1979).
Such a request continues to be constitutionally effec-
tive despite the defendant's willingness to make oral
statements. We conclude, therefore, that the defend-
ant did invoke his right to counsel under the fifth and
fourteenth amendments.

Having decided that the defendant's statement takes
us past the first step of our inquiry, we now must take

---

[8] In *Smith* v. *Illinois,* 469 U.S. 91, 95–96, 105 S. Ct. 490, 83 L. Ed. 2d
488 (1984), the United States Supreme Court declined to decide the appro-
priate procedure to be followed once an ambiguous or equivocal request
for counsel has been made. Instead, it referred without comment to differ-
ent approaches adopted by various jurisdictions, including the approach
adopted by this court in *State* v. *Acquin,* 187 Conn. 647, 672–75, 448 A.2d
163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411
(1983). *Smith* v. *Illinois,* supra, 96 n.3.

[9] The police were also aware that the defendant had never been arrested
before and was unfamiliar with police procedure.

the second step: whether he subsequently waived the right he had invoked. Once an individual has requested counsel, the burden is on the state to establish that such a waiver has been made. *Miranda* v. *Arizona,* supra, 475; *State* v. *Acquin,* supra, 677. The state must prove that the waiver was not only voluntary, but also constituted a "knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards* v. *Arizona,* supra, 482. This burden cannot be met "by showing only that [an accused] responded to further police-initiated custodial interrogation, even if he has been advised of his rights." Id., 484; *Smith* v. *Illinois,* supra, 98.

Because the right to have counsel present during a custodial interrogation is crucial to safeguarding the fifth amendment privilege against self-incrimination; *Fare* v. *Michael C.,* supra, 719; *Miranda* v. *Arizona,* supra, 469; the Supreme Court of the United States has developed a bright-line rule for establishing a waiver of this right. Once an accused has invoked his right to counsel, waiver can be established only by a dual showing: that the accused himself "(a) initiated further discussions with the police, *and* (b) knowingly and intelligently waived the right he had invoked." (Emphasis added.) *Smith* v. *Illinois,* supra, 95. Under this test, there can be no waiver unless the suspect initiates the subsequent encounter with the police. *Solem* v. *Stumes,* 465 U.S. 638, 646–47, 104 S. Ct. 1338, 79 L. Ed. 2d 579 (1984). The second part of the test, the "knowing and intelligent relinquishment" analysis, is not reached absent such initiation. *Smith* v. *Illinois,* supra; *Oregon* v. *Bradshaw,* 462 U.S. 1039, 1044–45, 103 S. Ct. 2830, 77 L. Ed. 2d 405 (1983) (plurality opinion).

In the present case, the state argues and the trial court found that the defendant's oral statements were properly admitted because, prior to the interrogation,

he had freely and intelligently waived his rights both to remain silent and to have counsel present. The trial court, in denying the defense motion, concluded that the defendant had made the statements "willingly, knowingly and intelligently after an effective knowledgeable waiver of his right to counsel at this point." In making this ruling, the trial court specifically noted that the defendant had been informed of his rights, had indicated that he understood them, had signed a standard rights form, and had willingly agreed to talk with the police. The court found that the defendant's request for counsel before he gave a written statement was evidence that he did in fact understand his rights. His oral statements to the police, then, were held to have been willingly made after an effective waiver of his right to counsel.

The precedent relied upon most heavily by the state in support of this position is *State* v. *Harris,* 188 Conn. 574, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983). At first glance, *Harris* seems to govern the present case. Like the present defendant, the defendant in *Harris* refused to give a written statement to police without counsel but agreed to give an oral statement. That oral statement was later admitted at trial over his objection, and we upheld that ruling. However, the defendant in *Harris* based his claim of error solely on the ground that he had not waived his fifth amendment right to remain silent. He specifically declined to raise the issue of whether his right to counsel under the fifth amendment had also been violated. Id., 577–78 n.4. Accordingly, we did not consider the claim on that ground, basing our decision on an application of the test of waiver articulated in *North Carolina* v. *Butler,* 441 U.S. 369, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). The principles that governed our holding in *Harris,* therefore, are not applicable to the present case because, where the right

to counsel is implicated, waiver is governed by the more stringent test enunciated by the United States Supreme Court in *Edwards* v. *Arizona,* supra, and *Smith* v. *Illinois,* supra.

Under this test, a finding that the accused initiated the subsequent "communications, exchanges, or conversations with the police"; *Edwards* v. *Arizona,* supra, 485; is an absolute prerequisite to a finding of waiver. *Solem* v. *Stumes,* supra. In the present case, the trial court found that the defendant had invoked his right to counsel. The state presented no evidence whatsoever to support a finding that the defendant had initiated the subsequent encounters with police which resulted in his incriminating statements. To the contrary, the evidence clearly established that the police had initiated the interrogations on both occasions. Since the defendant did not initiate the discussions, the trial court's finding of waiver was erroneous and any statements resulting from the interrogations were not admissible against the defendant.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.