## STATE OF CONNECTICUT *v.* WILLIAM BARRETT
(12018)

Peters, C. J., Healey, Shea, Callahan and Santaniello, Js.

Argued October 7—decision released December 8, 1987

*Robert L. Genuario,* for the appellant (defendant).

*James G. Clark,* assistant state's attorney, with whom were *Julia DiCocco Dewey,* assistant state's attorney, and, on the brief, *Alice Osedach,* legal intern, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is whether incriminating oral statements that the defendant made to the police during a custodial interrogation should have been suppressed by virtue of the right to counsel guaranteed by article first, § 8, of the Connecticut constitution. In our original decision in this case, we concluded that the statements were inadmissible under the fifth and fourteenth amendments to the United States constitution. *State* v. *Barrett,* 197 Conn.

50, 495 A.2d 1044 (1985). We declined to consider what state constitutional rights the defendant might have had because he had raised no such claim either in the trial court or before us. Id., 54 n.3. The United States Supreme Court concluded that we had misinterpreted the applicable precedents and held that the statements were admissible as a matter of federal constitutional law. Accordingly, it reversed our judgment and remanded the case for further proceedings not inconsistent with its opinion. *Connecticut* v. *Barrett,* 479 U.S. 523, 107 S. Ct. 828, 93 L. Ed. 2d 920 (1987). We now conclude that the trial court correctly admitted the defendant's oral statements into evidence. There is therefore no error in the defendant's conviction.

The defendant, William Barrett, was convicted, after a jury trial, of sexual assault in the first degree, in violation of General Statutes § 53a-70 (a), unlawful restraint in the first degree, in violation of General Statutes § 53a-95 (a), and possession of less than four ounces of a cannabis-type substance, in violation of General Statutes (Rev. to 1979) § 19-481 (c). The underlying facts are fully recounted in our earlier opinion. For present purposes, we note that the jury could reasonably have found that the defendant and another man sexually assaulted the victim after she had accepted an offer by the defendant to drive her to her sister's home. The victim's prompt report of the crime led the New Haven police to take the defendant into custody. The defendant was thereafter transferred to the Wallingford police for questioning.

The facts of the defendant's custodial interrogation are not disputed. After being advised by the Wallingford police of his constitutional rights, the defendant signed and dated an acknowledgment that he had received the warnings required by *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). When he was then asked to give a statement concern-

ing the assault, "[t]he defendant immediately replied that he would not give a written statement without his attorney present, although he was willing to answer questions orally. Without further inquiry, the police proceeded to interrogate him in the absence of counsel and to elicit an incriminating statement from him." *State v. Barrett*, supra, 55. After discovering that a tape recorder used to preserve the oral statements had malfunctioned, the police interrogated the defendant for a second time. After being again advised of his *Miranda* rights by the police, the defendant reiterated his wish to have his lawyer present before giving a written statement, but again stated that he was willing to discuss the matter orally. When the interrogation ended, a police officer made a final request to have the defendant put his oral statements into writing, but he again refused to do so without an attorney.

The trial court ruled that the incriminating oral statements were admissible because the defendant had freely and intelligently waived his rights both to remain silent and to have counsel present. In so ruling, the trial court concluded that the defendant had been repeatedly informed of his rights, had understood them, had signed a standard waiver form, and had agreed to speak with the police. The trial court found that the defendant's request for counsel before giving a written statement was evidence that he in fact understood his rights.

In the original appeal, we interpreted federal constitutional law to mandate a two step inquiry to determine whether the defendant's oral statements were admissible. *Smith* v. *Illinois*, 469 U.S. 91, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984); *Edwards* v. *Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378, reh. denied, 452 U.S. 973, 101 S. Ct. 3128, 69 L. Ed. 2d 984 (1981). "We must determine: (1) whether the defendant had in fact invoked his right to counsel; and (2) if so, whether he subsequently waived it." *State* v. *Barrett,*

supra, 54. We held that the defendant had, in effect, invoked his right to counsel and that his continuous interrogation by the police precluded a finding of waiver. Id., 57–58. Accordingly, because his incriminatory statements should have been suppressed, we ordered a new trial.

In reversing this judgment and remanding the case to us, the United States Supreme Court in *Connecticut* v. *Barrett,* supra, 832–33, determined that federal constitutional law permitted a distinction between the defendant's willingness to make uncounseled oral statements and his disinclination to make a written statement in the absence of his attorney. While acknowledging that, in light of the defendant's objection, a written statement obtained from the defendant would not have been admissible unless it met the strict waiver standards of *Edwards* v. *Arizona,* supra, the court concluded that no federal constitutional objective would be served by suppressing the oral statements in this case. "*Miranda* gives the defendant a right to choose between speech and silence, and Barrett chose to speak." *Connecticut* v. *Barrett,* supra, 832. Further, the court saw no need for liberal construction of the defendant's request for counsel. Because the defendant's request, in its clear and plain meaning, was aimed solely at obtaining counsel prior to giving a written statement, the court held that a broad reading would "disregard the ordinary meaning" of the request. Id. The court rejected the argument that it should undertake a more expansive interpretation of the defendant's verbally precise request in light of the defendant's apparent failure fully to understand the constitutional implications of his effort to distinguish between oral and written statements. Instead, the court relied upon the unchallenged findings of the trial court to conclude that the defendant had fully understood his right to remain silent and his right to counsel. Id., 832–33.

On remand, the defendant claims that the trial court erred in denying his motion to suppress because: (1) his state constitutional right to consult with an attorney during custodial interrogation was violated; (2) the police did not obtain a knowing and intelligent waiver of his right to remain silent; (3) his oral statements were given involuntarily; and (4) the state violated a specific court order in not disclosing all written summaries of his oral statements on a timely basis. We find no error.

I

Before we address the merits of the defendant's state constitutional claim, we must first resolve the preliminary issue whether such a claim is reviewable at this stage in the proceedings. As the state properly concedes, this court has the inherent authority to interpret the state constitution in the context of specific cases. "We clearly have the power to construe the Connecticut constitution in accordance with our particular analysis of the specific right at issue." *State* v. *Kimbro,* 197 Conn, 219, 234, 496 A.2d 498 (1985); see also *State* v. *Jarzbek,* 204 Conn. 683, 707–708, 529 A.2d 1245 (1987); *State* v. *Scully,* 195 Conn. 668, 674 n.11, 490 A.2d 984 (1985); *State* v. *Couture,* 194 Conn. 530, 564, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); *State* v. *Cohane,* 193 Conn. 474, 498–99 n.19, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 57, 469 A.2d 1201 (1984); *Griswold Inn, Inc.* v. *State,* 183 Conn. 552, 559 n.3, 441 A.2d 16 (1981); *Fasulo* v. *Arafeh,* 173 Conn. 473, 475, 378 A.2d 553 (1977); *Horton* v. *Meskill,* 172 Conn. 615, 641–42, 376 A.2d 359 (1977). The state nonetheless urges us to decline review for prudential reasons. Because of the defendant's acknowledged failure to raise a state constitutional claim until the present remand from the United States Supreme Court; *State* v. *Barrett,* supra, 54 n.3; the state asserts that it

"would be a travesty if this Court were to emasculate" established rules of appellate procedure by reviewing the state constitutional claim at this stage. We nonetheless conclude that review is appropriate in this case.

The basic rule governing the scope of appellate review is contained in Practice Book § 4185, which states that the Supreme Court "shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to the trial." The phrase "shall not be bound" implies that this court may, if it wishes, address an issue not properly preserved at trial. *Mickel v. New England Coal & Coke Co.,* 132 Conn. 671, 674, 47 A.2d 187 (1946). The rule embodied in § 4185 "serves the salutary purpose of alerting the trial court to possible errors while there is still opportunity to correct them." *State v. Simms,* 170 Conn. 206, 212, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976); see also *State v. Hinckley,* 198 Conn. 77, 81, 502 A.2d 388 (1985). We have therefore often declined on appeal to consider claims of error relating to trial practice unless appropriate steps were taken at the initial hearing to preserve the claim for review. *State v. Young,* 191 Conn. 636, 653, 469 A.2d 1189 (1983); *State v. Johnson,* 188 Conn. 515, 518A–19, 450 A.2d 361 (1982); *State v. Nardini,* 187 Conn. 513, 516–18, 447 A.2d 396 (1982). In the realm of constitutional adjudication, however, it is familiar learning that we may address unpreserved constitutional claims that fall within the "exceptional circumstances" doctrine of *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973). Under *Evans,* an unpreserved claim may be reviewed where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal or if the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial. Id., 70.

This court has applied the *Evans* doctrine to a great variety of federal constitutional claims. See *State* v. *Rouleau*, 204 Conn. 240, 243, 528 A.2d 343 (1987); *State* v. *Robinson*, 204 Conn. 207, 209–10, 527 A.2d 694 (1987); *State* v. *Sinclair*, 197 Conn. 574, 580, 500 A.2d 539 (1985); *State* v. *Torrence*, 196 Conn. 430, 435, 493 A.2d 865 (1985); *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982); *State* v. *Williams*, 182 Conn. 262, 267, 438 A.2d 80 (1980). Despite our recognition that belated constitutional adjudication provides incentives for tactical jockeying by defense counsel and at times encounters the practical obstacle of an unfocused trial court record, we have tempered the rigors of the rule of § 4185 to accommodate federal constitutional requirements for a fair trial. *State* v. *Evans*, supra, 68–71; see also *State* v. *Jones*, 193 Conn. 70, 74, 475 A.2d 1087 (1984); *State* v. *Darwin*, 155 Conn. 124, 142, 230 A.2d 573 (1967), rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630 (1968). We can perceive no reason of principle to devise a different rule of procedure for constitutional rights that have their origin in the state constitution.

In the circumstances of this case, review of the defendant's state constitutional claims falls within the established parameters of *State* v. *Evans*, supra. Concededly, we have before us transcripts and exhibits that provide a trial record affording us a sufficient basis for addressing the defendant's claim. Because this court has not yet addressed the precise state constitutional question that the defendant asks us to resolve, we conclude that the defendant's claim falls outside the realm of those "well-known or long-established" constitutional rights that counsel should be required to have raised at the trial level. Id., 68. State constitutional law is only now emerging from the shadow of its federal counterpart. It is therefore understandable that parties may not engage in elaborate discussion and anal-

ysis of untested and novel state constitutional theories in trial court proceedings where defense counsel has other more immediately accessible and tangible targets to pursue. "The reality is that time for original analysis is scarce, particularly in the ordinary criminal case; and particularly at the trial level, lawyers and courts often depend on the shorthand of case citations in preference to scrutinizing statutes and constitutional principles." *State* v. *Kennedy,* 295 Or. 260, 266, 666 P.2d 1316 (1983); see also E. Peters, "State Constitutional Law: Federalism in the Common Law Tradition," 84 Mich. L. Rev. 583, 589–92 (1986). We therefore conclude that the defendant's claim under article first, § 8, is reviewable at this juncture, despite his failure to raise the claim during the trial or on the original appeal.

Our decision today to review a state constitutional claim raised for the first time on remand from the United States Supreme Court is consistent with authority elsewhere. The Supreme Court of South Dakota has held that "this court has the inherent power on remand to hear an issue of such importance to the citizens of this state." *State* v. *Opperman,* 247 N.W.2d 673, 675 n.6 (S.D. 1976). The history of *State* v. *Opperman* resembles that of the instant case. In the initial appeal, the state supreme court, without mentioning the state constitution, held that a warrantless inventory search was unreasonable under the fourth amendment to the United States constitution. *State* v. *Opperman,* 89 S.D. 25, 37, 228 N.W.2d 152 (1975) *(Opperman I).* The United States Supreme Court reversed the judgment and remanded for further proceedings. *South Dakota* v. *Opperman,* 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). On remand, the state supreme court affirmed its original decision, as a matter of state constitutional law, even though the defendant had not pur-

sued such a claim in his initial appeal.[1] *State* v. *Opperman,* 247 N.W.2d 673, 675 (S.D. 1976) *(Opperman II).* Similarly, the Washington Supreme Court, in *State* v. *Chrisman,* 94 Wash. 2d 711, 619 P.2d 971 (1980) *(Chrisman I),* in its first decision, ruled that physical evidence seized in a warrantless search of the defendant's dormitory room should be suppressed on constitutional grounds but did not expressly refer to the state constitution. After reversal and remand by the United States Supreme Court; *Washington* v. *Chrisman,* 455 U.S. 1, 102 S. Ct. 812, 70 L. Ed. 2d 778 (1982); the court held that the state constitution afforded broader protection than its federal counterpart. *State* v. *Chrisman,* 100 Wash. 2d 814, 676 P.2d 419 (1984) *(Chrisman II).* The New York Court of Appeals has also recently affirmed, on remand, its inherent power to interpret the state constitution to order the suppression of items that the United States Supreme Court had deemed admissible as a matter of federal constitutional law. *New York* v. *P. J. Video, Inc.,* 475 U.S. 868, 106 S. Ct. 1610, 89 L. Ed. 2d 871 (1986); *People* v. *P. J. Video, Inc.,* 68 N.Y.2d 296, 501 N.E.2d 556, 508 N.Y.S.2d 907 (1986) *(P. J. Video, Inc. II),* cert. denied, 479 U.S. 1091, 107 S. Ct. 1301, 94 L. Ed. 2d 156 (1987); *People* v. *P. J. Video, Inc.,* 65 N.Y.2d 566, 483 N.E.2d 1120, 493 N.Y.S.2d 988 (1985) *(P. J. Video, Inc. I).* Comparable rulings can be found in other jurisdictions as well. See *Commonwealth* v. *Upton,* 394 Mass. 363, 476 N.E.2d 548 (1985); *State* v. *Jackson,* 672 P.2d 255 (Mont. 1983); *State* v. *Kennedy,* supra.

## II

We turn now to the merits of the defendant's claim of a constitutional infirmity, under the state constitu-

---

[1] The court noted, however, that the defendant had alluded to a state constitutional claim at the original suppression hearing. *State* v. *Opperman,* 247 N.W.2d 673, 675 n.5 (S.D. 1976) *(Opperman II).*

tion, in the incriminatory statements that he made to the police. The defendant maintains that the due process clause contained in article first, § 8, of our state constitution requires a more expansive interpretation of the defendant's invocation of his right to counsel than the Supreme Court of the United States found to be warranted as a matter of federal constitutional law. *Connecticut* v. *Barrett,* supra, 832. In the circumstances of this case, we are unpersuaded.

Article first, § 8, provides in pertinent part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . . " We have held that the warnings enunciated by *Miranda* v. *Arizona,* supra, originally made applicable in state prosecutions only because of the due process clause of the fourteenth amendment to the United States constitution, are independently required under the due process clause of article first, § 8, of the Connecticut constitution. *State* v. *Chung,* 202 Conn. 39, 45 n.7, 519 A.2d 1175 (1987); *State* v. *Simms,* 201 Conn. 395, 411 n.12, 518 A.2d 35 (1986); *State* v. *Burge,* 195 Conn. 232, 246 n.15, 487 A.2d 532 (1985); *State* v. *Ferrell,* 191 Conn. 37, 40–41, 463 A.2d 573 (1983); *State* v. *Falby,* 187 Conn. 6, 11 and n.1, 444 A.2d 213 (1982). "The warnings represent the belief, deep-seated in the Anglo-American legal tradition, that a person accused of a crime may be convicted only if exacting measures have been taken to assure that the accused has been treated with the most scrupulous fairness by agents of the government." *State* v. *Ferrell,* supra. By informing a person held in custody of the right to consult with an attorney prior to and during police interrogation, the warnings required by article first, § 8, significantly enhance that person's opportunity to make a knowing, intelligent and voluntary decision whether to speak or remain silent. Id. The *Miranda* warnings reflect the "perception that

the lawyer occupies a critical position in our legal system because of his [or her] unique ability to protect the [due process] rights of a client undergoing custodial interrogation." *Fare* v. *Michael C.,* 442 U.S. 707, 719, 99 S. Ct. 2560, 61 L. Ed. 2d 197, reh. denied, 444 U.S. 887, 100 S. Ct. 186, 62 L. Ed. 2d 121 (1979).[2]

In the absence of a subsequent waiver,[3] an accused who invokes his right to counsel in accordance with *Miranda* warnings may not be further interrogated until he has been able to secure the advice of an attorney. *State* v. *Ferrell,* supra, 44 n.10; *State* v. *Acquin,* 187 Conn. 647, 667, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983). A necessary predicate to the injunction against further interrogation is that the defendant did indeed invoke his right to counsel. If the defendant's request is equivocal, it is the obligation of the police to clarify the defendant's request. *State* v. *Acquin,* supra, 667–68.

The difficulty in this case is what implication to draw from the defendant's unequivocal but limited invocation of his right to counsel. The defendant made it clear that he would make no written statement in the absence of counsel, and the police in fact did not obtain such a statement from him. Cf. *State* v. *Shifflett,* 199 Conn. 718, 737–38, 508 A.2d 748 (1986). The defendant was equally explicit about his willingness to make oral state-

---

[2] By quoting from a case of the United States Supreme Court, we do not mean to imply that its decisions have anything more than a persuasive impact on our interpretation of the Connecticut constitution. *Horton* v. *Meskill,* 172 Conn. 615, 641–42, 376 A.2d 359 (1977). "Lest there be any doubt about it, when this court cites federal opinions in interpreting a provision of [the Connecticut constitution], it does so because it finds the views there expressed persuasive, not because it considers itself bound to do so by its understanding of federal doctrines." *State* v. *Kennedy,* 295 Or. 260, 267, 666 P.2d 1316 (1983).

[3] Because of the limited nature of the invocation of right to counsel in this case, we need not consider what standard for the waiver of that right is embodied by the Connecticut constitution.

ments prior to consultation with an attorney. This expressed willingness to speak may well have had its origins in a misperception about the risk associated with incriminatory oral communications. The record reveals, however, that the police did nothing to foster such a misperception. The defendant could not have overlooked the presence of the police tape recorder, especially when its initial malfunction led the police, after renewed *Miranda* warnings, to elicit from the defendant a renewal of his incriminatory oral statements. In these circumstances, we conclude that the defendant's limited request for counsel did not encompass the oral statements that he now seeks to suppress. By his election to make such oral statements in the absence of counsel, the defendant surrendered the rights afforded to him under article first, § 8.

## III

The defendant next claims that the trial court should have granted his motion to suppress his incriminatory oral statements because the police failed to obtain a knowing and intelligent waiver of his right to remain silent and because the statements were made involuntarily.[4] We are unpersuaded.

## A

The state has the burden of proving by a preponderance of the evidence that the defendant knowingly and intelligently waived his *Miranda* rights, including his right to remain silent. *State* v. *Boscarino,* 204 Conn. 714, 743, 529 A.2d 1260 (1987); *State* v. *Hernandez,* 204 Conn. 377, 395, 528 A.2d 794 (1987); *State* v. *Chung,* 202 Conn. 39, 48, 519 A.2d 1175 (1987); *State* v. *Toste,* 198 Conn. 573, 579–80, 504 A.2d 1036 (1986).

[4] The defendant makes both of these claims under federal law only. We therefore do not consider whether the Connecticut constitution embodies a different standard regarding the waiver of *Miranda* rights and the question of voluntariness.

A valid waiver is defined, in accordance with the well known test of *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), as the intentional relinquishment or abandonment of a known right. *State* v. *Shockley,* 188 Conn. 697, 706, 453 A.2d 441 (1982); *State* v. *Reed,* 174 Conn. 287, 293, 386 A.2d 243 (1978). Although mere silence of the accused is not enough to establish waiver; *State* v. *Wilson,* 183 Conn. 280, 284, 439 A.2d 330 (1981); the record need not show a specific expression of relinquishment of rights. *State* v. *Pecoraro,* 198 Conn. 203, 208, 502 A.2d 396 (1985). Instead, a waiver may be "inferred from the actions and words of the person interrogated"; *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); and from his "course of conduct." *State* v. *Wilson,* supra, 285.

In this case, the defendant asserts that his decision to speak with the police, viewed in the context of his adamant refusal to commit anything to writing without the advice of counsel, demonstrates that he did not fully understand either his right to remain silent or the warning that anything he said could be used against him. This claim is foreclosed by our decisions in *State* v. *Harris,* 188 Conn 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983), and *State* v. *Frazier,* 185 Conn. 211, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). In *State* v. *Harris,* supra, 578, the defendant was unwilling to make a written statement before consultation with a lawyer, but nonetheless proceeded to make oral statements placing himself at the scene of the crime. We concluded that "the defendant's expressed willingness to speak constituted an explicit affirmative act evidencing waiver, which the court could reasonably find persuasive despite the defendant's refusal to sign the waiver form." Id., 580. In a similar vein, we held, in *State* v.

*Frazier,* supra, 225–26, that a refusal to give a written statement does not, in itself, preclude a finding of waiver.

The determination that the defendant validly waived his right to remain silent is buttressed by affirmative evidence of the defendant's knowing participation in his custodial interrogation. The officer who administered the *Miranda* warnings to the defendant in this case testified at the suppression hearing that the defendant, when asked if the warnings needed to be clarified, "indicated to me, no, he understood everything fairly well." More important, the defendant himself testified that he understood his rights. The defendant in fact partially exercised his *Miranda* rights by refusing to give a written statement without his attorney present. In an analogous situation, we have held that the assertion of the right to remain silent after an initial willingness to speak with police is a strong indication that the defendant understood his rights. *State* v. *Pecoraro,* supra, 208–209; *State* v. *Pellegrino,* 194 Conn. 279, 289, 480 A.2d 537 (1984). The only contrary indicium to which the defendant points is his lack of prior experience with the police. That single fact is not sufficient to defeat a finding of waiver otherwise supported by the record. *State* v. *Frazier,* supra, 226. Accordingly, we find ample support for the trial court's conclusion that the defendant knowingly and intelligently waived his constitutional right to remain silent.

B

The defendant also claims that his oral statements should be suppressed because they were made involuntarily. Irrespective of *Miranda,* and the fifth amendment itself, due process of law prohibits the state from using an involuntary confession at trial. *Brown* v. *Allen,* 344 U.S. 443, 475, 73 S. Ct. 397, 97 L. Ed. 469 (1953); *State* v. *Shifflett,* supra, 727. The state has the burden

of proving the voluntariness of a confession by a preponderance of the evidence. *Colorado* v. *Connelly,* 479 U.S. 157, 168, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Chung,* supra, 53; *State* v. *Smith,* 200 Conn. 465, 477, 512 A.2d 189 (1986). Unless that burden is met, a confession compelled by pressure from a police officer is inadmissible for any purpose. *Mincey* v. *Arizona,* 437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *State* v. *Smith,* supra, 476. The United States Supreme Court recently declared that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado* v. *Connelly,* supra, 167. Provided that predicate exists, " '[t]he ultimate test remains . . . 'Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.' " *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 225–26, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), quoting *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961). The question of voluntariness is one of fact for determination by the trial court in the exercise of its discretion, subject to the constitutional standards of due process. *State* v. *Derrico,* 181 Conn. 151, 162–63, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); *State* v. *Staples,* 175 Conn. 398, 408, 399 A.2d 1269 (1978).

We find no persuasive evidence of involuntariness on the present record. The defendant contends that he involuntarily incriminated himself because the police: (1) offered no medical attention to an eye injury he had suffered prior to interrogation; and (2) repeatedly urged

him to make a written statement, in spite of his limited invocation of his right to counsel. As to the former, the record indicates that the minor eye injury did not interfere with the defendant's capacity to decide for himself whether to cooperate with the police. The defendant conceded under cross-examination that his eye injury did not render him incapable of hearing and understanding his rights. The latter claim is similarly meritless. Whatever persuasion the police attempted to exercise was, in the final analysis, irrelevant because it was fruitless: the police never succeeded in having the defendant execute a written statement. The defendant therefore suffered no visible harm from whatever pressure the police exerted. The defendant does not claim on appeal that he was physically restrained or abused or otherwise coerced or cajoled into incriminating himself. The record fails to indicate that the defendant suffered from a disabling educational, intellectual or psychological deficit. *State* v. *Weidenhof,* 205 Conn. 262, 268, 533 A.2d 545 (1987); *State* v. *Harris,* supra, 581. The trial court therefore did not err in finding his statements to have been voluntary.

## III

The defendant's final claim of error relates to an allegedly late disclosure of written summaries of the defendant's oral statements prepared by the police. By pretrial motion pursuant to Practice Book § 750,[5] the defendant moved for production of the substance of any oral declarations he had made to the police of which

[5] "[Practice Book] Sec. 750. —DISCOVERABLE AS OF RIGHT

"Subject to the provisions of Sec. 784, upon written motion of the defendant the prosecuting authority shall disclose to the defendant and allow the defendant to inspect, copy or photograph any of the following items which are known to him and obtainable by him in the exercise of due diligence:

"(1) Any relevant statements made by the defendant to any law enforcement officer of this state or his agent, or any copies of the same;

"(2) The substance of any oral declarations of the defendant of which a written or other tangible recording has been made and which were made

a written or other tangible recording existed. The trial court, *Reynolds, J.*, granted this motion. Prior to trial, the state disclosed the substance of oral statements contained in a written report of Officer Peter Cameron, one of the three officers present during the interrogation sessions. The state did not, however, disclose similar reports filed by the two other officers, Sergeant John Genovese and Lieutenant Murt Howard. These reports were only disclosed to the defendant after the complaining witness had testified at trial. None of the officers had as yet testified.

The trial court held a suppression hearing to determine the consequences of this late disclosure. The defendant argued that Genovese and Howard should be precluded from testifying about his oral statements because the delay in the disclosure of their reports violated the trial court's discovery order. The trial court ruled, however, that the state had in fact complied with the discovery order because the untimely reports did not reveal anything new of "substance" as that term is used in Practice Book § 750. The defendant properly preserved his objection to this ruling.

In his brief on appeal, the defendant initially claimed that the trial court's ruling had been erroneous because the belated reports contained a new and significant fact, damaging to the defendant, concerning the victim's struggle during the assault. At oral argument, however, defense counsel withdrew this claim after noticing that the Cameron report, which had been disclosed prior to trial, had also referred to the struggling of the victim.[6] The defendant nonetheless maintains that he

by the defendant, whether before or after arrest, in response to interrogatories by any person then known to the defendant to be a law enforcement officer or his agent or a prosecuting authority or his agent; or

"(3) Any relevant statements of coconspirators which the prosecuting authority intends to offer in evidence at any trial or hearing."

[6] The court appreciates the candor of defense counsel in withdrawing this claim.

suffered prejudice because the allegedly late disclosures contained four additional facts not revealed by the first report. The gist of this claim is that the late disclosures denied the defendant the opportunity to prepare for cross-examination of the victim and the officers.

We decline to review this claim, however, because the defendant admittedly did not seek a continuance or recess in order to minimize the possibility of prejudice. When an allegedly erroneous nondisclosure does not implicate a constitutional right, this court has rarely set aside a conviction unless the defendant has suffered unavoidable prejudice. A continuance is ordinarily the proper method for dealing with a late disclosure. *State* v. *Villafane,* 171 Conn. 644, 669, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); see *State* v. *Miner,* 197 Conn. 298, 305–306, 497 A.2d 382 (1985). We reject the defendant's claim that the trial court erred in not ordering a continuance sua sponte. We have not previously imposed such a duty on the trial court and the present circumstances do not warrant a departure from existing procedures. *State* v. *Boucino,* 199 Conn. 207, 215, 506 A.2d 125 (1986).

There is no error.

In this opinion the other justices concurred.