[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
CT Page 16750
On September 27, 1994, Rodney Love was murdered in New Britain, Connecticut. At the time of this incident, Nestor R. was fourteen years old. On September 20, 1999, Nestor R. was arrested on unrelated criminal charges and taken into custody by the New Britain Police. During the late night hours of September 20, 1999 into the early morning hours of September 21, 1999, Nestor R. was interviewed by Detective Michael Baden of the New Britain Police Department regarding the 1994 murder of Rodney Love. Nestor R. was nineteen years old at the time of his interview with Detective Baden. The interview took place with only Detective Baden and Nestor R. present. On July 9, 2001, the New Britain Police Department obtained an arrest warrant for Nestor R. charging him with Accessory to Murder (C.G.S. §§ 53a-8 53a-54a) and Accessory to Assault in the First Degree (C.G.S. §§ 53a-8 53a-59) with respect to the September 27, 1994 incident. On July 12, 2001, Nestor R. was referred to Juvenile Court in New Britain pursuant to this arrest warrant. Subsequently, on August 2, 14, and 16, 2001, a probable cause hearing was held at Juvenile Court. Pursuant to C.G.S. § 46b-137 (a), as allowed by C.G.S. §46b-127 (b), Nestor R. moved to suppress his statement given on September 20-21, 1999 on the grounds that he did not knowingly and voluntarily waive his constitutional rights and that he did not have a parent or guardian present with him during his interview with Detective Baden.
The Court finds the following:
 Facts:
At the time of the police interview in September of 1999, Nestor R. was nineteen years old. At the time of his interview, the defendant was arrested on unrelated charges and in custody at the New Britain Police Department. Prior to this night's arrest, the evidence established that the defendant had been previously arrested as an adult for other crimes. On the night of September 20, 1999, Detective Baden advised the defendant of his Miranda rights and the defendant signed a waiver of rights form (State's exhibit #5) and agreed to talk to the detective. The defendant was requested to read the waiver of rights form out loud and he acknowledged his understanding of those rights. The defendant was calm; CT Page 16751 he did not appear to be under the influence of any alcohol, medicine, or drugs. Detective Baden offered Nestor R. food and beverage, which was declined. The defendant was allowed to use the bathroom and to have cigarettes while he was interviewed by Detective Baden. The defendant spoke to the detective about his knowledge of the 1994 murder of Rodney Love. His statement was reduced to writing that night and adopted by the defendant. (State's exhibit #6). There is no evidence of any threats or promises or made to the defendant by the detective during the interview, nor any evidence of police coercion or misconduct.
 Legal Analysis
An individual's right against self-incrimination, as provided in theFifth Amendment of the United States Constitution, requires the exclusion of any statement made by an accused during custodial interrogation, unless the accused has been advised of his rights and has voluntarily waived them. Miranda v. Arizona, 384 U.S. 436, 444 (1966). These warnings are independently required under article first, § 8, of the Connecticut constitution. State v. Barrett, 205 Conn. 437, 447 (1987). The purpose of the warnings is to counteract any coercive atmosphere attendant upon custodial interrogation by the police and to reduce the risk of involuntary statements. State v. Doehrer, 200 Conn. 642, 646
(1986).
In order to be entitled to Miranda warnings, the defendant must be in custody and the defendant must be subject to police interrogation. Statev. Tomasko, 238 Conn. 253, 267 (1996). The defendant bears the initial burden of showing that he was subjected to custodial interrogation. Id. at 269. The defendant has met his burden of proof in the instant matter: he was under arrest and being held at the New Britain Police Department on unrelated charges when Detective Baden questioned him about the 1994 incident.
Once the finding of custodial interrogation has been made, the prosecution has the burden of demonstrating that the Miranda warnings were given. State v. Gray, 200 Conn. 523, 531 (1986). The credible evidence establishes that these warnings were given as required by law: the defendant not only signed a waiver of rights form acknowledging the warnings, but engaged in a discussion regarding these rights with the detective. The prosecution, however, must not only prove that the warnings were given, but must also prove by a preponderance of the evidence that the defendant's waiver was knowingly, voluntarily and intelligently made. State v. Chung, 202 Conn. 39, 48 (1987).
"The question of voluntariness is one of fact for determination by the trial court in the exercise of its discretion, subject to the CT Page 16752 constitutional standards of due process." State v. Barrett, 205 Conn. 437,452 (1987). The rule requiring that confessions be voluntary is derived from constitutional due process requirements under both the federal and state constitutions, and therefore requires proof by the preponderance of the evidence, not beyond a reasonable doubt. State v. James, 237 Conn. 390,410-26 (1996). The purpose of the required warning is to assure that a confession is the product of an essentially free and unconstrained choice by its maker. State v. Madera, 210 Conn. 22, 48 (1989). "[T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined." State v. Pinder, 250 Conn. 385, 418 (1999). Factors to be considered include the following: the subject's maturity, education, physical condition, and mental health; the lack of any advice as to defendant's constitutional rights; the location and length of the detention; the intensity and prolonged nature of the interrogation; and the presence of physical punishment, inclusive of lack of food or sleep.
Based upon the credible evidence presented to the Court and the applicable standards required by law, the Court finds that the State has sustained its burden of establishing that Nestor R.'s waiver and statement given to Detective Baden on September 20 and 21, 1999 was voluntarily, knowingly and intelligently made. The defendant has failed to establish any evidence of police conduct that was meant to overbear the defendant's free will. The defendant clearly was of sound mind and competency to understand his actions that evening with Detective Baden. The interview was not prolonged or physically demanding. The defendant willing participated in the questioning after a thorough advisement of his legal rights. The credible evidence establishes a voluntarily, knowingly and intelligently made waiver and statement by the accused.
The defendant also claims that his statement should be suppressed because he was not questioned with a parent or guardian present. In making this claim, the defendant relies upon C.G.S. § 46b-137 which provides in pertinent part: "(a) Any admission, confession or statement, written or oral, by a child shall be inadmissible in any proceeding for delinquency against the child making such admission, confession or statement unless made by such child in the presence of his parent orparents or guardian and after the parent or parents or guardian and child have been advised (1) of the child's right to retain counsel. . . . (2) of the child's right to refuse to make any statements . . . and (3) that any statements the child makes may be introduced into evidence against him . . ."(Emphasis added). While the crime is alleged to haven taken place at a time when the defendant was fourteen years old, the police interview on this matter did not occur until the defendant was nineteen years old. CT Page 16753
In State v. Whitaker, 215 Conn. 739, 749 (1990) the Connecticut Supreme Court indicated that "a decision to expand the scope of the exclusionary rule of 46b-137 (a) requires the kind of interest balancing determination best left to the legislature. There are strong reasons to restrict the inadmissibility of confessions made in the absence of a parent to those of minors under sixteen, as the legislature has done in 46b-137 (a)." The Court noted that it had previously refused to adopt a per se rule that children under sixteen are incompetent to waive the assistance of counsel: "a per se rule of nonwaivability might actually frustrate a principal goal of juvenile law of encouraging children to accept responsibility for their transgressions and take an active role in their rehabilitation." See In re Manuel R., 207 Conn. 725, 734 (1988).
Moreover, the presence of a parent was noted also not to necessarily provide an unmitigated benefit, even to a child."[A]s judicial and scholarly authorities attest, parents may, for their own reasons, exert pressure on children to confess to alleged offenses and to waive the assistance of counsel." See State v. Whitaker, supra at 749 (citations omitted).The Court in Whitaker declined to hold that a seventeen year old charged with murder must be afforded an opportunity to contact a parent before making a valid waiver of his rights to silence and counsel.
In reaching this finding in Whitaker, the Court found that C.G.S. § 46b-120 provided the following definition: "`Child' means any person under sixteen years of age. . . ." The Court noted that C.G.S. § 46b-120 was amended in 1971 by Public Acts 1971, No. 72, 14, to reduce the age limit on the definition of "child" from eighteen to sixteen. The amendment made it clear that the legislature didn't intend "youths", defined in C.G.S. § 46b-120 as those between the ages of sixteen and eighteen, to be afforded the same protections as "children" sixteen and under. Id. at 758.
Because Nestor R. was nineteen at the time of his interview with the police detective, this Court finds that he is not entitled to the same protections that would be afforded to a "child". The defendant's request that his statement be suppressed because he did not have a parent or guardian present with him at the time of his waiver of rights and statement is found to be without merit based upon a review of relevant statutory and case law.
For all the foregoing reasons. the defendant's request to suppress his statement is denied.
BY THE COURT: CT Page 16754
JOAN K. ALEXANDER, SUPERIOR COURT JUDGE