STATE OF CONNECTICUT *v.* DOMINICK REDENTE
(7004)

SPALLONE, O'CONNELL and STOUGHTON, Js.

522

Argued June 19—decision released August 29, 1989

*Leo E. Ahern,* for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Jane B. Emons,* former assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant, Dominick Redente, was charged in a substitute information with three counts of receiving cash contributions in violation of General Statutes (Rev. to 1983) §§ 9-348k (9) and 9-348*l* and with one count of larceny in the third degree in violation of General Statutes §§ 53a-124 (a) (1), 53a-121 and 53a-119 (1). He pleaded not guilty and elected to be tried to a jury. The jury returned a verdict of guilty on all four counts which was accepted by the trial court.

On appeal, the defendant claims the trial court erred (1) in allowing an expert witness to give opinion testimony concerning ultimate issues of fact, (2) in failing

to charge the jury on the state's burden to prove a particular element of the crime, (3) in finding that there was sufficient evidence to prove larceny, (4) in admitting the defendant's taped conversation into evidence, (5) in finding that the checks in issue were "cash," within the meaning of § 9-348k (9), and (6) in failing to grant the defendant a reasonable continuance. We find no error.

The jury could reasonably have found the following facts. The defendant had served as the East Haven Democratic town committee chairman from 1970 to 1983. On August 25, 1983, a testimonial dinner honoring East Haven Mayor Anthony Proto was held in East Haven. On the same date, Marilyn Vitale, who was challenging Proto for mayor, sent a letter to the state election commission (commission) questioning the propriety of soliciting funds through a testimonial dinner.

In response to the letter, Jeffrey Garfield, executive director and general counsel for the commission, ordered an investigation based on the complaint. Subsequently, the commission and Dominick Palumbo, treasurer of the testimonial committee, entered into a consent agreement. Under its terms, Palumbo was to pay a $1000 civil penalty out of the funds raised and return any remaining net proceeds to the donors on a pro rata basis. Palumbo also was ordered to provide the commission with a written accounting of the distribution to the donors.

The defendant assisted in returning checks to the donors. As the defendant returned the checks, he requested that the donors give him cash or a check payable to cash in an amount equal to the rebate. The defendant endorsed and deposited four of the checks, two into a personal savings account and two into a

trustee account for his grandson for which the defendant was the only trustee.

Both the commission and the state's attorney's office undertook an investigation, and the state brought criminal charges against the defendant and Anthony Proto based upon election law violations. The trial court dismissed the charges against each on the ground that the statutes in question were unconstitutionally vague. The state was granted permission to appeal and, in *State v. Proto,* 203 Conn. 682, 526 A.2d 1297 (1987), our Supreme Court reversed the trial court's dismissals and remanded the cases for further proceedings. On September 23, 1987, the trial court granted the state's motion to disqualify the defendant's attorney. On February 1, 1988, a substitute information was filed charging the defendant with one count of larceny in the third degree and three counts of election law violation. The defendant engaged new counsel on November 7, 1987, and, on December 3, 1987, the matter was assigned for trial to begin on January 11, 1988. The defendant's new counsel requested that the trial be scheduled three or four weeks past January 11, but that request was denied by the trial court over the defendant's objection.

The defendant's first claim of error is that the trial court erred in allowing Garfield to testify as an expert on election law and to give opinion testimony concerning the ultimate issues for the trier of fact. Garfield was the chief counsel and executive director of the enforcement commission and was the state's first witness at trial. The defendant does not contend that Garfield was not qualified to be an expert witness. Garfield testified as to the distinction between "contributions" and "expenditures."[1] He explained that dis-

[1] General Statutes (Rev. to 1983) § 9-335 provides in pertinent part: "(14) (A) 'Contribution' means (i) any gift, subscription, loan, advance, payment or deposit of money or anything of value made for the purpose of influenc-

tinction on the basis of his reading of the case of *Buck-ley* v. *Valeo,* 424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659

ing the nomination for election, or election of any person or for the purpose of aiding or promoting the success or defeat of any constitutional amendment, referendum question or any question to be voted upon at any election or on behalf of any political party; (ii) a written contract, promise or agreement to make a contribution for any such purpose; (iii) the payment by any person other than a candidate or campaign treasurer of compensation for the personal services of any other person which are rendered without charge to a committee or candidate for any such purpose; (iv) an expenditure, as defined in subdivision (15) of this section, when made by a person with the cooperation of or in consultation with any candidate, candidate committee or agent of such candidate or which is made in concert with, or at the request of or suggestion of, any candidate, candidate committee or agent of such candidate; or (v) funds received by a committee which are transferred from another committee or other source for any such purpose. (B) The term 'contribution' does not include (i) a loan of money by a national or state bank made in the ordinary course of business; (ii) any communication made by any corporation, labor organization or other membership organization or association to its members, owners, stockholders, executive or administrative personnel, and their families; (iii) nonpartisan voter registration and get-out-the-vote campaigns by any corporation, labor organization or other membership organization or association aimed at its members, owners, stockholders, executive or administrative personnel, and their families; (iv) services provided without compensation by individuals volunteering their time; (v) the use of real or personal property, and the cost of invitations, food and beverages, voluntarily provided by an individual to a candidate or on behalf of a state central or town committee, in rendering voluntary personal services for candidate or party-related activities on the individual's residential premises, to the extent that the cumulative value of such invitations, food and beverages provided by such individual on behalf of any single candidate for nomination or election does not exceed two hundred dollars with respect to any single election, and on behalf of all state central and town committees does not exceed four hundred dollars in any calendar year; (vi) the sale of any food or beverage for use in any candidate's campaign or for use by any state central or town committee at a charge less than the normal comparable charge, if such charge is at least equal to the cost of such food or beverage to the vendor, to the extent that the cumulative value of the discount given to or on behalf of any single candidate for nomination or election does not exceed two hundred dollars with respect to any single election, and on behalf of all state central and town committees does not exceed four hundred dollars in a calendar year; (vii) any unreimbursed payment for travel expenses made by an individual who on his own behalf volunteers his personal services to any single candidate for nomination or election to the extent the cumulative

(1976). Over further objections, he was also allowed to testify that, in his opinion, a local party chairman should be charged with knowledge of the election laws.

value does not exceed two hundred dollars with respect to any single election, and on behalf of all state central or town committees does not exceed four hundred dollars in a calendar year; (viii) the payment by a party committee, political committee or individual of the costs of preparation, display, mailing or other distribution incurred by such committee or individual with respect to any printed slate card, sample ballot or other printed list containing the names of three or more candidates for nomination or election; (ix) the donation of any item of personal property by an individual to a committee for a fund-raising affair, including a tag sale or auction, or the purchase by an individual of any such item at such fund-raising affair, to the extent that the cumulative value donated or purchased does not exceed thirty dollars; (x) the purchase by an individual of a single ticket to any fund-raising affair to the extent the purchase price of such ticket does not exceed fifteen dollars; (xi) the purchase of advertising space which clearly identifies the purchaser in a program for a fund-raising affair, provided that the cost of such space does not exceed one hundred dollars if the purchaser is a stock corporation or other business organization or fifty dollars for purchases by any other person; (xii) the payment of money by a candidate to his candidate committee; or (xiii) the donation of goods or services by a stock corporation or other business organization to a committee for a fund-raising affair, including a tag sale or auction, to the extent that the cumulative value donated does not exceed one hundred dollars.

"(15) (A) 'Expenditure' means (i) any purchase, payment, distribution, loan, advance, deposit or gift of money or anything of value, made for the purpose of influencing the nomination for election, or election, of any person or for the purpose of aiding or promoting the success or defeat of any constitutional amendment, referendum question or any question to be voted upon at any election, or on behalf of any political party; (ii) a written contract, promise or agreement to make an expenditure; or (iii) the transfer of funds by a committee to another committee. (B) The term 'expenditure' does not include (i) a loan of money by a state or national bank made in the ordinary course of business; (ii) any communication made by any corporation, labor organization or other membership organization or association to its members, owners, stockholders, executive or administrative personnel, and their families; (iii) nonpartisan voter registration and get-out-the-vote campaigns by any corporation, labor organization or other membership organization or association to its members, owners, stockholders, executive or administrative personnel, and their families; (iv) services provided without compensation by individuals volunteering their time; (v) any news story, commentary or editorial distributed through the facilities of any broadcasting station, newspaper, magazine or other periodical, unless such facilities are owned or controlled by any political party, committee

The defendant claims that, in explaining the difference between a "contribution" and an "expenditure," the witness was rendering a legal opinion and that he thereby usurped the court's function. We disagree. "Generally, expert testimony may be admitted if the witness has a special skill or knowledge, beyond the ken of the average juror, that, as properly applied, would be helpful to the determination of an ultimate issue." *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973). Here, Garfield first was asked to read part of the statutory definitions to the jury.[2] As our own Supreme Court noted, the definitions of "expenditure" and "contribution" in § 9-335 (14) and (15) are not "paragons of clarity." See *State* v. *Proto,* supra, 698. Given that "contribution" and "expenditure" each carries a specific and precise definition, it was undoubtedly helpful to the jury to have Garfield's testimony on this matter.

We note also that a clarification of the difference between an expenditure and a contribution does not concern an ultimate issue. It was still up to the jury to decide whether the checks in question did constitute

or candidate; (vi) the use of real or personal property, and the cost of invitations, food and beverages, voluntarily provided by an individual to a candidate or on behalf of a state central or town committee, in rendering voluntary personal services for candidate or party-related activities on the individual's residential premises, to the extent that the cumulative value of such invitations, food and beverages provided by such individual on behalf of any single candidate for nomination or election does not exceed two hundred dollars with respect to any single election, and on behalf of all state central and town committees does not exceed four hundred dollars in a calendar year; or (vii) any unreimbursed payment for travel expenses made by an individual who on his own behalf volunteers his personal services to any single candidate for nomination or election to the extent that the cumulative value does not exceed two hundred dollars with respect to any single election, and on behalf of all state or town committees does not exceed four hundred dollars in a calendar year."

[2] These parts of the statutes were later read to the jury as part of the trial court's charge.

"contributions" within the meaning of § 9-348k (9).[3] Similarly, Garfield's opinion that a town party chairman would be familiar with the election laws does not embrace an ultimate issue of fact. Garfield expressed an opinion as to town chairmen in general, not whether the defendant himself was familiar with the election laws. Whether the defendant had wilfully and knowingly violated this law was left to the jury to decide. There is no merit to this claim.

The defendant's second claim of error is that the trial court failed to instruct the jury correctly concerning the state's burden of proof. In his request to charge, the defendant asked the trial court to charge the jury that it was the state's burden to prove that the checks in question were "contribution[s] 'made for the purpose' of promoting the success of a political party and candidate." The defendant claims that the trial court's charge inadequately stated the elements of the crime because it omitted all references to the phrase "made for the purpose."

The defendant based his request to charge on language of the Supreme Court in *State* v. *Proto,* supra, 705 n.15, in which the court stated: "In addition to establishing the required scienter element under § 9-348k (9), and proving, under § 9-348*l*, that the violation was knowing and wilful, the state would also have to establish as part of its proof, that the contribution was '*made* for the purpose' of influencing the candidate's nomination or election, as required by § 9-335 (14)." (Emphasis in original.)

---

[3] General Statutes (Rev. to 1983) § 9-348k provides in pertinent part: "ACTS PROHIBITED AS CORRUPT PRACTICES. The following persons shall be guilty of corrupt practices and shall be punished in accordance with the provisions of § 9-348*l*: . . . (9) any person who offers or receives a cash contribution in excess of fifty dollars to promote the success or defeat of any political party, candidate, referendum question or any constitutional amendment or any question to be voted upon at any state election."

The trial court's charge contained the following statements: "Now, in a charge of this nature, ladies and gentlemen, there are three separate elements that the State must prove beyond a reasonable doubt. And I will go through each one of those. The first element is that the contribution alleged to be received by Dominick Redente was cash and in an amount greater than fifty dollars. . . . The second element is that it was a contribution *to promote the success of a political party or candidate.* That is pretty much self explanatory, ladies and gentlemen.

"Now you have heard a lot, you have heard talk about contribution and expenditures. And that goes along with this element of the charge as to what is a contribution. A contribution means any gift, subscription, loan, advance, payment or deposit of money or anything of value, *made for the purpose* of influencing the election of any person or on behalf of a political party. . . . If you should find that all or any one of the checks that are mentioned—the contributions mentioned in these first three counts were not contributions made to promote the success of a political party or candidate, then with respect to whatever checks— whatever check or checks you should so find, you must render a verdict of not guilty to that particular election law count. . . . Now ladies and gentlemen we go to the third element. The third element is that the defendant, Dominick Redente, acted knowingly and wilfully when he received cash contributions *made for the purpose* of promoting the success of a political party and candidate." (Emphasis added.)

Jury instructions do not have to be given in the exact language of a defendant's request to charge. See *State v. Wood,* 208 Conn. 125, 132, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); *State v. Boone,* 15 Conn. App. 34, 56, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084

(1988). Here, the trial court's charge substantially conformed to the defendant's request to charge and clearly and adequately instructed the jury on the elements of the crime. There is no merit to this claim.

The defendant's third claim is that the state failed to produce sufficient evidence that the defendant was guilty of larceny in the third degree. Under General Statutes § 53a-119, "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

In reviewing a sufficiency of the evidence claim, we look at the evidence in a light most favorable to sustaining the jury's verdict. *State* v. *Smith,* 15 Conn. App. 122, 125, 543 A.2d 301, cert. denied, 209 Conn. 805, 548 A.2d 441 (1988). In drawing its conclusions, the jury is permitted to apply its own common sense and experience to the totality of the evidence presented. *State* v. *Johnson,* 14 Conn. App. 586, 597, 543 A.2d 740, cert. denied, 209 Conn. 804, 548 A.2d 440 (1988).

The jury heard testimony from three persons who had written the checks in question. Richard Mauro, Joseph Paollela, and Paul Minnone all testified that they had purchased tickets to the testimonial dinner for Proto. All three testified that after receiving their rebate checks for the dinner, they made out new checks payable to cash and gave the checks to the defendant.[4] Paollela and Mauro testified that in making these new checks they intended to make a political donation. All three testified that their checks were not intended to go to the defendant for his personal use. Minnone testified that his intent in making the second check might have been to replace the first check. In the past none

---

[4] Paollela testified that he gave his check to the defendant's son, but that he knew it was going to go to the defendant.

of the witnesses had ever made a political contribution by writing a check made payable to cash.

The state also presented evidence that the defendant personally endorsed these replacement checks and deposited them in bank accounts that were under his control. The checks themselves were devoid of any other endorsements. On the basis of the evidence presented, the jury could reasonably have concluded that the replacement checks were intended to go to the Democratic town committee or the testimonial committee and that the defendant took them with the intent to keep them for himself. There is no merit to this claim.

The defendant's fourth claim is that the trial court erred in allowing into evidence a tape recording of a conversation between the defendant and an inspector from the New Haven state's attorneys' office. The tape was entered into evidence, as well as a transcript thereof, through the inspector. The inspector testified that the tape had been made during the course of his investigation of the events leading to the defendant's arrest. The inspector testified that he and another inspector had interviewed the defendant at his home and that during the interview the tape recorder was placed on the defendant's kitchen table in full view.

At trial the defendant objected to the admission of the tape and transcript, on hearsay and constitutional grounds.[5] On the basis of its reading of *State* v. *Del-Vecchio*, 191 Conn. 412, 464 A.2d 813 (1983), the trial court reviewed the transcript of the tape and overruled the defendant's objections.

---

[5] Although in his brief the defendant alludes to constitutional violations, his argument is based on the claim that this was impermissible hearsay. In light of his failure to brief the constitutional claims, this aspect of the issue is deemed abandoned. See *Mihalek* v. *Cichowski*, 4 Conn. App. 484, 485 n.2, 495 A.2d 721 (1985).

We have addressed this type of claim in *State* v. *Kluttz,* 9 Conn. App. 686, 704, 521 A.2d 178 (1987), where we stated that the out-of-court statements of a criminal defendant constitute an exception to the hearsay rule. See also *State* v. *Stepney,* 191 Conn. 233, 250–52, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). Contrary to the defendant's assertions, there is no requirement that a defendant's statements must be inculpatory in nature to fit within the rule; the statements need only be relevant. The defendant makes no claim that the tape was not relevant. The tapes therefore were properly admitted. There is no merit to this claim.

The defendant's fifth claim is that the trial court erred in refusing to dismiss the charges concerning cash contributions. He claims the trial court was incorrect in ruling that checks made payable to cash were "cash contributions" under General Statutes (Rev. to 1983) § 9-348k (9). The trial court relied on *State* v. *Moreno,* 156 Conn. 233, 243, 240 A.2d 871 (1968), in which the court cited with approval the proposition that " '[i]n ordinary business usage a check means the same as money.' *State* v. *Griswold,* [73 Conn. 95, 98, 46 A. 829 (1900)]."

It is well settled that in construing a statute the court is entitled to presume that the legislature was aware of prior judicial construction relevant to any statute it enacts. See *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 200 n.14, 491 A.2d 1058 (1985). We do not need to rely on such a presumption, however, to uphold the trial court's ruling because it is clear from the legislative history that checks were intended to be included within the ambit of a "cash contribution" under § 9-348k (9). The legislative history reveals that at the time that this legislation was passed, the definition of "cash" was discussed on the floor of the House

of Representatives. See 17 H.R. Proc., Pt. 7, 1974 Sess., p. 3633–37. The legislature was specifically made aware that the term "cash" included checks. An amendment that would have replaced the word "cash" with the more restrictive term "currency" was opposed, and the bill passed with the term "cash." It is clear, therefore, that the trial court was correct in concluding that the legislature intended to include checks made payable to cash within the ambit of the statute. There is no merit to this claim.

The defendant's final claim is that the trial court erred in not granting the defendant a continuance. "[T]he decision to grant or deny a continuance lies within the sound discretion of the trial court and will not be disturbed unless a clear abuse of that discretion is shown." *State* v. *Stanley*, 197 Conn. 309, 311–12, 497 A.2d 46 (1985). " 'It must be shown that the trial judge acted arbitrarily and substantially impaired the defendant's ability to defend himself, before an appellate court will conclude that the trial court abused his discretion.' *United States* v. *Ellenbogen*, 365 F.2d 982, 985 (2d Cir. 1966), cert. denied, 386 U.S. 923, 87 S. Ct. 892, 17 L. Ed. 2d 795 (1967)." *State* v. *Myers*, 193 Conn. 457, 463, 479 A.2d 199 (1984).

The defendant claims that because he had engaged new counsel only one month before the trial date was set and because the case involved complex issues, the trial court should have granted his request for a three to four week continuance. We are unpersuaded by this claim. First, the record reveals that the defendant obtained new counsel three months before trial commenced. Second, the defendant does not claim that the lack of a continuance substantially impaired the effectiveness of his counsel, but raises only a vague allegation that his counsel's effectiveness was "impacted."

After our review of the record we conclude that the trial court acted within its discretion. There is no merit to this claim.

There is no error.

In this opinion the other judges concurred.