## STATE OF CONNECTICUT *v.* MARTIN GEISLER
## (6934)

DUPONT, C. J., SPALLONE, DALY, O'CONNELL, NORCOTT, FOTI, LAVERY, LANDAU and HEIMAN, Js.

Argued April 17—decision released June 24, 1991

*Richard Emanuel,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom were *Steven M. Sellers,* assistant state's attorney, and, on the brief, *John J. Kelly,* chief state's attorney, for the appellee (state).

DUPONT, C. J. The dispositive issue in this appeal is whether evidence derived from a warrantless entry and arrest in the defendant's home should have been suppressed by virtue of the right to be free from unreasonable searches or seizures guaranteed by article first, § 7, of the Connecticut constitution.

In our original decision in this case, *State* v. *Geisler,* 22 Conn. App. 142, 576 A.2d 1283, cert. denied, 215 Conn. 819, 576 A.2d 547 (1990), vacated,      U.S.    , 111 S. Ct. 663, 112 L. Ed. 2d 657 (1991) (*Geisler I*), we concluded that the warrantless entry into the defendant's home violated the fourth amendment to the United States constitution because there were no exigent circumstances present to justify such entry. We held that evidence derived from the illegal arrest was a tainted product of that arrest and, thus, should have been suppressed. *State* v. *Geisler,* supra, 158–59.

The defendant claimed in *Geisler I* that the failure of the trial court to suppress the evidence violated his rights under both the federal and state constitutions.[1] Although the defendant had preserved his state constitutional claim at trial, we considered the defendant's claim under only federal law.[2] The United States

___

[1] Specifically, the defendant had claimed that his rights under the fourth amendment to the United States constitution and article first, §§ 7, 8 and 9 of the Connecticut constitution had been violated.

[2] Our Supreme Court and this court have declined to review a defendant's state constitutional claim, deeming it to have been abandoned, when the defendant has not separately briefed and analyzed that claim. See, e.g., *State* v. *Hernandez,* 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987); *State* v.

Supreme Court vacated our judgment and remanded the case to us for further consideration in light of *New York* v. *Harris,* 495 U.S. 14, 110 S. Ct. 1640, 109 L. Ed. 2d 13 (1990).[3]

The *Harris* court, in a five to four decision, held that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an

*Redente,* 19 Conn. App. 521, 531 n.5, 563 A.2d 1365 (1989); *State* v. *Thompson,* 17 Conn. App. 490, 498 n.5, 554 A.2d 297, cert. denied, 211 Conn. 803, 559 A.2d 1136 (1989). That declination, however, does not mean that we are not able to review such a claim if we choose to do so. Furthermore, it is noteworthy that nowhere in *State* v. *Geisler,* 22 Conn. App. 142, 576 A.2d 1283, cert. denied, 215 Conn. 819, 576 A.2d 547 (1990), vacated, U.S. , 111 S. Ct. 663, 112 L. Ed. 2d 657 (1991), did we state that the defendant had abandoned his state constitutional claim. Given the unique procedural posture of this case and because we have not yet addressed the precise state constitutional question that is before us, we have decided to review the defendant's state constitutional claim, which is now fully briefed and is of great importance to Connecticut citizens. See *State* v. *Barrett,* 205 Conn. 437, 442–43, 534 A.2d 219 (1987); see also *People* v. *Harris,* 77 N.Y.2d 434, 437 n.2, 570 N.E.2d 1051, 568 N.Y.S.2d 702 (1991).

Even if we assume that the defendant abandoned his state constitutional claim on appeal but preserved it at the trial level, our decision to review it on remand from the United States Supreme Court is consistent with our case law. In *State* v. *Barrett,* supra, our Supreme Court reviewed an unpreserved state constitutional claim, raised for the first time on remand from the United States Supreme Court, under the exceptional circumstances doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), which was later refined by *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). It would be illogical to afford *Evans-Golding* review to a defendant, as the one in *Barrett,* who completely failed to preserve his state constitutional claim at the trial court but to deny review to a defendant, such as the one in this case, who preserved it at trial but failed to set forth a separate argument for it in his initial brief to this court.

[3] The state's petition for a writ of certiorari to the United States Supreme Court was limited to the issue of whether we had properly determined that the derivative evidence should have been suppressed. That issue relates only to our disposition of the count of assault in the second degree with a motor vehicle, General Statutes § 53a-60d, and does not affect our judgment on the offense of operating a motor vehicle while under the influence of intoxicating liquor, General Statutes § 14-227a (a) (2).

arrest made in the home in violation of *Payton [*v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)]." *New York* v. *Harris,* supra, 21.[4]

The facts of this case were set forth fully in *Geisler I* and only certain ones need be recited here. At a hearing on a motion to suppress, the parties stipulated that " '(1) probable cause existed for the defendant's arrest at the time of the warrantless entry and (2) the defendant was arrested inside his home by police who entered without a warrant.' " *State* v. *Geisler,* supra, 148. After arresting the defendant, the police placed him in a patrol car, advised him of his *Miranda* rights,[5] and proceeded to police headquarters. Once at the police station, the police again advised the defendant of his rights. They then asked the defendant to answer a series of questions and to perform an agility test, both of which were videotaped. The police also administered two intoximeter tests and photographed the defendant. The defendant moved to have his statements, the video tape, the intoximeter results and the photograph suppressed on the ground that they were obtained by exploiting his illegal arrest. The trial court ruled that this evidence was not the fruit of an illegal arrest, and thus admitted it.

Following the remand of the case by the United States Supreme Court, the defendant has set forth a separate argument claiming that he is entitled to relief under our state constitution. Specifically, the defendant argues that excluding only evidence found or statements taken *inside* a defendant's home after an illegal, warrantless arrest therein is incompatible with article

---

[4] In *Payton* v. *New York,* 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), the court held that "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable."

[5] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

first, § 7, of our state constitution. That section provides in its entirety: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." This language is very similar to the protections afforded by the fourth amendment to the United States constitution.[6]

In the context of a specific case, we have the inherent authority to interpret the Connecticut constitution. *State* v. *Dukes,* 209 Conn. 98, 109, 547 A.2d 10 (1988); *State* v. *Barrett,* 205 Conn. 437, 442, 534 A.2d 219 (1987); *State* v. *Kimbro,* 197 Conn. 219, 234, 496 A.2d 498 (1985). "We have frequently relied upon decisions of the United States Supreme Court interpreting the fourth amendment, as well as other amendments to the United States constitution, to define the contours of the protections provided in the various sections of the declaration of rights contained in our state constitution." *State* v. *Marsala,* 216 Conn. 150, 159–60, 579 A.2d 58 (1990). Although federal interpretations of consonant provisions of the federal constitution are persuasive authority, we are not bound to follow a federal interpretation in interpreting our state constitution. *State* v. *Dukes,* supra, 113. The United States Supreme Court has specifically noted that each state has the "sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitition." *Pruneyard Shopping Cen-*

---

[6] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

*ter* v. *Robins,* 447 U.S. 74, 81, 100 S. Ct. 2035, 64 L. Ed. 2d 741 (1980). On several occasions, the Connecticut Supreme Court has looked to our state constitution, when appropriate, to afford our citizens greater protection of certain personal rights than provided for by similar provisions of the federal constitution. See, e.g., *State* v. *Marsala,* supra, 160; *State* v. *Dukes,* supra, 112; *State* v. *Stoddard,* 206 Conn. 157, 166, 537 A.2d 446 (1988); *State* v. *Kimbro,* supra, 235. One of the benefits of federalism is that the citizens of a particular state will enjoy all the rights and protections guaranteed by the federal government as well as such greater rights and protections as may be accorded them by the state government.

We must interpret state constitutional provisions within the context of the times. *State* v. *Dukes,* supra, 114. "The Connecticut constitution is an instrument of progress, it is intended to stand for a great length of time and should not be interpreted too narrowly or too literally so that it fails to have contemporary effectiveness for all of our citizens." Id., 115.

In the present case, we must determine whether the exclusionary rule of this state, protecting those rights afforded by article first, § 7, of the Connecticut constitution, is broader than the federal exclusionary rule as defined in *New York* v. *Harris,* supra.

The court in *Harris* began its analysis by noting that, in light of *Payton* v. *New York,* supra, the defendant's warrantless arrest in his home violated the fourth amendment to the United States constitution. The court, nevertheless, declined to apply the exclusionary rule to statements that were made by the defendant outside of his home following the *Payton* violation because the court reasoned that "the rule in *Payton* was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects,

like Harris, protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime." *New York* v. *Harris, supra,* 17. The court further reasoned that even though *Payton* drew a line at the entrance to a home, nothing in *Payton* suggested that "an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house." Id. The court, therefore, concluded that because the police had probable cause to arrest the defendant, the defendant was lawfully in custody once he was removed from his home. Id.

Having reached this conclusion, the court proceeded to distinguish such cases as *Taylor* v. *Alabama,* 457 U.S. 687, 102 S. Ct. 2664, 73 L. Ed. 2d (1982); *Dunaway* v. *New York,* 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); and *Brown* v. *Illinois,* 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975). These cases hold that evidence derived from an unlawful warrantless entry and arrest should be suppressed if it is not sufficiently attenuated from the initial unlawfulness. *Taylor* v. *Alabama, supra,* 693; *Dunaway* v. *New York, supra,* 217; *Brown* v. *Illinois, supra,* 602. The *Harris* court first reasoned that an "attenuation analysis is only appropriate where, as a threshold matter, courts determine that 'the challenged evidence is in some sense the product of illegal government activity.' " *New York* v. *Harris, supra,* quoting *United States* v. *Crews,* 445 U.S. 463, 471, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980). According to the *Harris* court, in *Brown* and its progeny, the challenged evidence was the product of illegal government activity because in those cases the challenged evidence was obtained while the defendants were being wrongfully detained. The *Harris* majority, however, reasoned that once the defendant was removed from his home, he was not unlawfully

detained because the police had probable cause to arrest him. The court, therefore, held that an attenuation analysis was not warranted because the challenged evidence, namely a postarrest statement made to the police while the defendant was at the police station, could not possibly be the product of illegal government activity because the defendant was lawfully detained.

The court found justification for its conclusion by reasoning that the deterrent purpose of the *Payton* rule was sufficiently vindicated in the suppression of any evidence obtained inside the home. The court stated that suppressing evidence acquired outside of the home following a *Payton* violation would lead to only a minimal increment in deterrence and would have little effect on police officers' actions.

Article first, § 7, of the Connecticut constitution provides in part that our citizens *"shall* be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . . ." (Emphasis added.) In order for this provision to have contemporary effectiveness for all of our citizens by ensuring that they will be protected against unreasonable searches or seizures, there must be an effective remedy for failure to safeguard those rights. "[T]he exclusionary rule is now widely recognized as an effective remedy for enforcement of the constitutional protection against unconstitutional searches and seizures." *State* v. *Dukes,* supra, 110. Our state Supreme Court and this court have explicitly recognized that the purpose of the exclusionary rule is to deter illegal police conduct. *State* v. *Zindros,* 189 Conn. 228, 253, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984); *State* v. *Brown,* 14 Conn. App. 605, 622, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988); *State* v. *Cooper,* 9 Conn. App. 15, 27, 514 A.2d 758 (1986); see *State* v. *Williamson,* 14 Conn. App. 108, 552 A.2d 815 (1988), aff'd, 212 Conn. 6, 562 A.2d 470 (1989).

By requiring that only evidence acquired *inside* a home following a *Payton* violation be suppressed, the per se rule in *Harris* does not grant to Connecticut citizens the scope of the exclusion that we believe is necessary to deter police from entering a home without a warrant. This deterrence cannot be achieved if the evidence acquired immediately thereafter *outside* a home cannot be suppressed under any circumstances, unless it resulted from illegal government activity.

The *Harris* court undertakes no attenuation analysis at all, whereas, it is our view that such an analysis is appropriate in order to determine whether there is a temporal and causal connection between the entry into the home and the particular evidence later obtained outside the home. Here, the state has conceded that the time between the defendant's arrest in the home and the defendant's station house statements and consent to take the intoximeter tests was minimal. *State v. Geisler,* supra, 156. Furthermore, there were no intervening circumstances to break the causal connection between the warrantless entry into the home and the evidence in question. Id., 157.

In *Harris,* the court concluded that if a *Payton* violation would require a suppression of evidence obtained outside a home, there would be a minimal increment in deterring the police from entering a home without a warrant. In our view, even a minimal deterrence is an important gain, to make certain that "[t]he people [of this state] shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . . ."

As pointed out by the dissent in *Harris,* "[a]n invasion into the home is . . . the worst kind of invasion of privacy. An intrusion into that sanctum is an assault on the individual's solitude and on the family's communal bonds" and the effects of that intrusion "extend

far beyond the moment the physical occupation of the home ends." *New York* v. *Harris,* supra, 27, 28 (Marshall, J., dissenting).

We view the question to be answered, as did the *Harris* dissent, to be "whether the invasion of privacy [of the home] occasioned by the illegal *arrest* taints a statement made after the violation has ended"; (emphasis in original) id., 29; and not "whether the illegality itself was continuing at the time the evidence was secured." Id., 30. If the latter were the question, then the first two factors of the *Brown* attenuation analysis, namely temporality and intervening circumstances, would be irrelevant because time would never pass and circumstances would never intervene between the time the unlawfulness occurred and the time the evidence was acquired. Id.

In *People* v. *Harris,* 77 N.Y.2d 434, 570 N.E.2d 1051, 568 N.Y.S.2d 702 (1991), the Court of Appeals of New York considered the precise question we consider in this opinion. After its original decision that a defendant's statement should be suppressed and a new trial ordered, the case was remanded for further consideration in view of *New York* v. *Harris,* supra. The language of the New York and United States constitutions on searches and seizures is identical and, therefore, the New York Court of Appeals recognized that it could not rely on statutory differences for its analysis or conclusion that the New York constitution affords greater protection to its citizens than the United States constitution. The court, instead, relied on " 'any preexisting State statutory or common law defining the scope of the individual right in question; the history and traditions of the State in its protection of the individual right; any identification of the right in the State Constitution as being one of peculiar State or local concern; and any distinctive attitudes of the State citizenry toward the definition, scope or protection of the indi-

vidual right.' " *People* v. *Harris,* supra, 438.[7] The court concluded that the reasoning of the United States Supreme Court should be rejected because New York has "established a protective body of law in this area resting on concerns of due process . . . which is substantially greater than that recognized by other State jurisdictions and 'far more expansive than the Federal counterpart . . . .' " (Citations omitted.) Id., 439.

To ensure the security guaranteed by article first, § 7, of our state constitution, we must ask "[w]hether the evidence derived from an unlawful warrantless entry and arrest is attenuated from the initial unlawfulness" based on the facts of each case. *State* v. *Geisler,* supra, 155. We, therefore, reject a per se inclusion of evidence obtained outside a home following a *Payton* violation, regardless of temporality and intervening circumstances. The facts of this case are such that the unlawful entry into the home was not diluted or lessened in effect by the passage of time or intervening circumstances when the evidence in question was obtained.

We conclude that the federal exclusionary rule, as narrowed by *New York* v. *Harris,* supra, does not ensure that Connecticut citizens' rights, as guaranteed by our state constitution, will be adequately protected. We hold, therefore, that our state exclusionary rule, as derived from article first, § 7, bars the state from using evidence acquired outside a defendant's home following a *Payton* violation, unless the taint resulting from the violation is sufficiently attenuated from the initial entry into the home.

---

[7] Because of the similarity of language in the Connecticut constitution and the United States constitution, we do not analyze the slight differences of language but rely on the general principles as considered by the New York court.

The judgment of *State* v. *Geisler,* 22 Conn. App. 142, 576 A.2d 1283 (1990), is affirmed and the case is again remanded for a new trial on the charge of assault in the second degree with a motor vehicle under General Statutes § 53a-60d.

In this opinion O'CONNELL, NORCOTT, FOTI, LAVERY, LANDAU and HEIMAN, Js., concurred.

SPALLONE, J., with whom DALY, J., joins, dissenting. The majority opinion is predicated on its prior determination in *State* v. *Geisler,* 22 Conn. App. 142, 576 A.2d 1283, cert. denied, 215 Conn. 819, 576 A.2d 547 (1990), vacated,      U.S.      , 111 S. Ct. 663, 112 L. Ed. 2d 657 (1991) (*Geisler I*), that the police illegally entered the defendant's house. For the reasons stated in *Geisler I,* I would not disturb the trial court's conclusion that the police permissively entered the defendant's premises under exigent circumstances. Accordingly, I dissent.