STATE OF CONNECTICUT *v.* GARY GRANT
(11630)

HEIMAN, FREEDMAN and SCHALLER, Js.

Argued November 29, 1993—decision released March 1, 1994

*John R. Williams,* for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *Michael J. Weber, Jr.,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to sell cocaine in violation of General Statutes §§ 53a-48 (a) and 21a-278 (b). The defendant claims that (1) the conviction violated his right against double jeopardy, (2) the trial court improperly denied him access to, or an in camera review of, the drug treatment records of the chief prosecution witness in violation of the defendant's state and federal constitutional rights to confront his accusers, and (3) the trial court improperly denied his motion to suppress his confession. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On March 12, 1991, Trooper Thomas Murray, acting undercover, contacted Odell Williams to purchase cocaine. This was a part of an ongoing investigation of the defendant and Williams involving a number of set up drug transactions. Williams and Murray arranged to meet in the parking lot of the Showcase Cinemas in Orange at 7:30 p.m. that evening.

Murray and the undercover narcotics team congregated in the parking lot of the Showcase Cinemas and positioned themselves at various points. Murray, wearing a body microphone transmitter, parked his vehicle and waited for Williams to arrive. Soon thereafter, Murray saw Williams and another man, whom he later identified as the defendant, enter the parking lot in a red Volkswagen Jetta. The defendant drove to the side of the lot opposite from where Murray was parked. Williams walked across the parking lot and

entered the front passenger side of Murray's vehicle. The two men engaged in a brief discussion and Murray counted out $5500, the previously agreed-upon price for five ounces of cocaine. Williams then directed Murray to drive to where the Jetta was parked. Murray parked his vehicle so that the driver's sides of both cars were next to each other.

The defendant was seated in the driver's seat of the Jetta. Williams got out of Murray's vehicle, entered the right rear door of the Jetta and slid behind the defendant. Williams and the defendant engaged in a brief conversation, then Williams motioned for Murray to join them. Murray exited his vehicle and entered the right rear seat of the Jetta, but left the $5500 in the undercover vehicle. The defendant handed Williams a cardboard box, which Williams gave to Murray, indicating that the cocaine was in the box. Murray found a plastic baggie containing cocaine in the box.

At that point, Murray gave a previously agreed-upon oral arrest signal, but the undercover team failed to respond. Williams asked Murray for the money; Murray again gave the signal, and told Williams that he had to get the money from his vehicle. The undercover team again failed to respond to the signal. Murray then returned to his vehicle. At this time, the undercover team arrived in several vehicles and attempted to block the Jetta. As the officers approached, Murray put his hands on his head as if to surrender and shouted that the defendant had set him up. Police officers converged on the area. The defendant attempted to escape, but his vehicle struck a police vehicle.

The defendant was arrested at the scene and subsequently charged in six separate informations.[1] The

---

[1] Docket No. CR22-06551: One count of sale of cocaine on or about February 22, 1991, in the town of Milford, while not a drug-dependent person, in violation of General Statutes § 21-278 (b); and one count of conspiracy

defendant entered a plea of not guilty to each count. The separate informations were consolidated for trial. The defendant was found guilty of one count of conspiracy to sell cocaine, as set forth in Docket No. CR5-88324.

I

The defendant first claims that his conviction of conspiracy to sell cocaine in violation of General Statutes §§ 53a-48 (a) and 21a-278 (b) violated his constitutional right against double jeopardy. Specifically, the defendant claims that the jury verdicts convicting him of conspiracy to sell cocaine in Docket No. CR5-88324, and acquitting him of conspiracy to sell cocaine in Docket No. CR5-89040 violated his federal and state[2] constitutional protections against double jeopardy. We disagree.

to sell cocaine at various times and locations, including but not limited to February 22, 1991, in violation of General Statutes §§ 53a-48 (a) and 21a-278 (b).

Docket No. CR22-06552: One count of sale of cocaine in the town of Milford, on or about February 28, 1991, while not a drug-dependent person, in violation of § 21-278 (b); and one count of conspiracy to sell cocaine at various times and locations, including but not limited to February 28, 1991, in violation of §§ 53a-48 (a) and 21a-278 (b).

Docket No. CR5-89040: One count of sale of cocaine on or about March 6, 1991, in the town of Orange, while not a drug-dependent person, in violation of § 21-278 (b); and one count of conspiracy to sell cocaine, at various times and locations, including but not limited to March 6, 1991, in violation of §§ 53a-48 (a) and 21a-278 (b).

Docket No. CR22-06553: One count of sale of cocaine on or about March 8, 1991, in the town of Milford, while not a drug-dependent person, in violation of § 21-278 (b); and one count of conspiracy to sell cocaine at various times and locations, including but not limited to March 8, 1991, in violation of §§ 53a-48 (a) and 21a-278 (b).

Docket No. CR5-88324: One count of sale of cocaine on or about March 12, 1991, in the town of Orange, while not a drug-dependent person, in violation of § 21-278 (b); and one count of conspiracy to sell cocaine at various times and locations, including but not limited to March 12, 1991, in violation of §§ 53a-48 (a) and 21a-278 (b).

Docket No. CR5-88323: One count of attempted assault in the second degree, on or about March 12, 1991, in the town of Orange in violation of §§ 53a-49 (a) (1) and 53a-60 (a) (3).

[2] Because the defendant has not provided an independent analysis to support his state constitutional claim, we will not review it. Our Supreme Court

After the jury rendered its verdict, acquitting the defendant on all counts except conspiracy to sell cocaine in Docket No. CR5-88324, the defendant moved to set aside the verdict on the ground that it was inconsistent with the jury's acquittal on the sale count in that same information. This motion was denied. At the sentencing hearing, the defendant renewed his motion to set aside the verdict as inconsistent. The trial court denied this motion. On appeal, the defendant does not press his claim of inconsistent verdicts, but now seeks to claim a violation of his right against double jeopardy. This claim, not having been raised before the trial court, was not properly preserved.

"Pursuant to *State* v. *Golding,* [213 Conn. 233, 239–40, 567 A.2d 823 (1989)], a defendant may prevail on an unpreserved claim of constitutional error only by meeting all of the following conditions: '(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' *State* v. *Marra,* 222 Conn. 506, 527, 610 A.2d 1113 (1992). In harmony with the objective of *Golding,* the defendant's claim may be

and this court have declined to review a defendant's state constitutional claim, deeming it to have been abandoned, when the defendant has not separately briefed and analyzed that claim. See, e.g., *State* v. *Hernandez,* 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987); *State* v. *Redente,* 19 Conn. App. 521, 531 n.5, 563 A.2d 1365 (1989); *State* v. *Thompson,* 17 Conn. App. 490, 498 n.5, 554 A.2d 297, cert. denied, 211 Conn. 803, 559 A.2d 1136 (1989). That declination, however, does not mean that we are not able to review such a claim if we choose to do so. *State* v. *Hoeplinger,* 27 Conn. App. 643, 652 n.2, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992); *State* v. *Geisler,* 25 Conn. App. 282, 283–84 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992).

disposed of 'by focusing on whichever condition is most relevant in the particular circumstances.' *State* v. *Golding,* supra, 240; *State* v. *Pinnock,* [220 Conn. 765, 778, 601 A.2d 521 (1992)]." *State* v. *Cooper,* 227 Conn. 417, 440, 630 A.2d 1043 (1993).

Prong two of *Golding* requires that the defendant raise a claim of the violation of a fundamental constitutional right. The defendant "bears the burden of demonstrating that his claim is indeed a violation of a fundamental constitutional right 'rather than a common law or statutory claim wearing a constitutional mask.' " *State* v. *Owens,* 25 Conn. App. 181, 197, 594 A.2d 991, cert. denied, 220 Conn. 910, 597 A.2d 337 (1991), citing *State* v. *Watlington,* 216 Conn. 188, 193, 579 A.2d 490 (1990).

"The double jeopardy clause of the fifth amendment to the United States constitution provides: '[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . .'[3] 'The prohibition of double jeopardy prevents not only multiple trials, but also multiple *punishments* for the same offense in a single trial. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).' . . . *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985); *State* v. *John,* 210 Conn. 652, 693, 557 A.2d 93 (1989); P. Robinson, Criminal Law Defenses (1984) § 68 (a). In the context of a single trial, 'the threshold issue [in determining whether the double jeopardy clause is implicated is] whether multiple punishments have been imposed.' *State* v. *John,* supra, 694. 'The prosecution and submission to a jury of multiple charges arising from the same offense is not itself

---

[3] Constitutional guarantees against double jeopardy were made applicable to the states through the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

unconstitutional. See *Ohio* v. *Johnson*, 467 U.S. 493, 500, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984).' *State* v. *Devino*, supra, 73–74 n.4." (Emphasis in original.) *State* v. *Anderson*, 212 Conn. 31, 34–35, 561 A.2d 897 (1989).

Here, multiple punishments for the different counts brought by the state were not imposed against the defendant. The defendant was convicted and sentenced on only one count of conspiracy to sell cocaine. Therefore, the defendant's right against double jeopardy has not been implicated and we decline to review the defendant's claim under prong two of the *Golding* test. See id.

## II

The defendant next claims that the trial court improperly denied him access to, or in camera review of, the drug treatment records of the chief prosecution witness, Williams, in violation of the defendant's state and federal constitutional rights to confront his accusers. Although we agree with the defendant, we conclude that the error was harmless.

The following facts are necessary to the disposition of this claim. Williams testified for the prosecution that he and the defendant had jointly committed all the drug related crimes alleged in the information. On cross-examination, Williams admitted that he was addicted to drugs, using them daily at the time of the alleged crimes. He stated that he was under the influence of cocaine on each occasion. Williams testified that he had been incarcerated from the time of the last incident until four or five months later when he entered a drug treatment center. At this point, the defendant asked the court to make an in camera inspection of Williams' drug treatment records[4] to determine whether any

---

[4] Williams' treatment records from the Ducher Hall Treatment Center were subpoenaed by the defendant.

information was contained therein pertaining to Williams' perception and memory. The court denied the defendant's request on the ground that the defendant had made no showing as to what the records could add to the cross-examination. The court further stated that because Williams admitted his addiction and treatment, the defendant had adequately impeached Williams. The defendant took an exception to the trial court's ruling.

The defendant continued his cross-examination of Williams. Williams admitted that he did not think his memory of the events was accurate and that his use of cocaine had affected his ability to perceive and recall the events. The defendant again moved that the trial court make an in camera review of Williams' drug treatment records. The trial court denied this motion stating that the records would add nothing and would be collateral since the witness had not denied his addiction, treatment, or the effect of the addiction on his memory and perception. The defendant excepted to the trial court's denial of this motion.

"The people of this state enjoy a broad privilege in the confidentiality of their psychiatric communications and records, including those pertaining to their diagnosis, prognosis or treatment for alcohol [or drug] abuse or alcoholism. See General Statutes [Rev. to 1989] §§ 17-155bb (b) [now § 17a-630 (c)], 52-146d, 52-146e. A criminal defendant has a constitutional right to cross-examine state witnesses, however, which may include impeaching or discrediting them by attempting to reveal to the jury the witnesses' biases, prejudices or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception. *Delaware* v. *Fensterer,* 474 U.S. 15, 19, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985) (per curiam); *Davis* v. *Alaska,* 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Storlazzi,* 191 Conn. 453, 457, 464 A.2d 829 (1983). Thus, in some instances, a patient's psychiatric privi-

lege must give way to a criminal defendant's constitutional right to reveal to the jury facts about a witness' mental condition that may reasonably affect that witness' credibility. *State* v. *Hufford,* 205 Conn. 386, 401–402, 533 A.2d 866 (1987); *State* v. *Pierson,* 201 Conn. 211, 227, 514 A.2d 724 (1986); see also *Davis* v. *Alaska,* supra, 320 (defendant's right to cross-examine for bias is paramount to state's policy of protecting juvenile offender's identity). The defendant's right of cross-examination does not, however, allow him to discredit and impeach 'in whatever way, and to whatever extent, the defense might wish.' *Delaware* v. *Fensterer,* supra, 20; *Ohio* v. *Roberts,* 448 U.S. 56, 73 n.12, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). We have therefore directed trial courts to engage in a specific procedure designed to accommodate this inherent tension.

"If, for the purposes of cross-examination, a defendant believes that certain privileged records would disclose information especially probative of a witness' ability to comprehend, know or correctly relate the truth, he may, out of the jury's presence, attempt to make a preliminary showing that 'there is a reasonable ground to believe' that the failure to produce the records would likely impair his right to impeach the witness. *State* v. *Pierson,* supra, 225; *State* v. *Esposito,* 192 Conn. 166, 179, 471 A.2d 949 (1984). If in the trial court's judgment the defendant successfully makes this showing, the state must then obtain the witness' permission for the court to inspect the records in camera. A witness' refusal to consent to such an in camera inspection entitles the defendant to have the witness' testimony stricken. *State* v. *Burak,* 201 Conn. 517, 524, 518 A.2d 639 (1986); *State* v. *Bruno,* 197 Conn. 326, 331, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986); *State* v. *Esposito,* supra, 179–80.

"Upon inspecting the records in camera, the trial court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. *State* v. *Esposito,* supra, 176; *State* v. *Storlazzi,* supra, 459 n.4. If the court determines that the records are probative, the state must obtain the witness' further waiver of his privilege concerning the relevant portions of the records for release to the defendant, or have the witness' testimony stricken. If the court discovers no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review. *State* v. *Hufford,* supra, 404; *State* v. *Pierson,* supra, 228. Once the trial court has made its inspection, the court's determination of a defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused. *State* v. *Herring,* 210 Conn. 78, 109, 554 A.2d 686 (1989); *State* v. *Kelly,* 208 Conn, 365, 380, 545 A.2d 1048 (1988)." *State* v. *D'Ambrosio,* 212 Conn. 50, 55–59, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990).

In *State* v. *D'Ambrosio,* supra, our Supreme Court stated that "in order to induce the trial court to inspect the records in camera, the defendant had to make a threshold showing that there was a reasonable probability that the records would reveal that 'at any pertinent time' [the witness' drug] problem affected his testimonial capacity 'to a sufficient degree to warrant further inquiry.' *State* v. *Pierson,* supra, 225–26; *State* v. *Esposito,* supra, 180." Id., 59. Here, the defendant demonstrated on cross-examination that Williams had a drug addiction for which he sought treatment, and that it had impaired his perception and memory. We conclude that this satisfied the threshold showing required by *State* v. *D'Ambrosio,* supra, and therefore,

the trial court improperly refused to attempt to obtain Williams' consent to inspect his treatment records in camera.

That conclusion does not end our analysis, however. We must determine whether the trial court's failure to inspect Williams' records requires reversal. Where a trial court's error is of constitutional magnitude, reversal is unnecessary if " 'the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' " *Rose* v. *Clark,* 478 U.S. 570, 576, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), quoting *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); see also *State* v. *Johnson,* 21 Conn. App. 291, 295–96, 573 A.2d 1218 (1990); *State* v. *Coleman,* 14 Conn. App. 657, 679, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988).

Here, the defendant was charged with eleven different counts and convicted with respect only to the count of conspiracy to sell cocaine in violation of General Statutes §§ 53a-48 (a) and 21a-278 (b) relating to the March 12, 1991 incident at the Showcase Cinemas in Orange where the defendant was arrested at the scene of the crime. Our review of the evidence presented at trial reveals that there was substantial evidence presented for the jury to convict the defendant on this count without Williams' testimony. This evidence consisted of the on-site arrest, a later inculpatory statement by the defendant admitting that he and Williams had been in the parking lot for the purpose of selling cocaine, and the testimony of Murray. Williams' testimony was merely cumulative on this count. We conclude, therefore, that the court's error, which implicated the defendant's constitutional right to confront his accusers, or to impeach and discredit the state's witness, was harmless beyond a reasonable doubt.

## III

The defendant's final claim is that the trial court improperly denied his motion to suppress his confession. He claims that the admission of his inculpatory statement violated his federal constitutional right against self-incrimination under the fifth and fourteenth amendments to the United States constitution. We do not agree.

The following facts are necessary to the disposition of this claim. The trial court held a suppression hearing out of the presence of the jury. Only the defendant and former State Trooper Bruce Lockwood testified at the hearing. Lockwood testified that the defendant had been advised of his *Miranda*[5] rights while sitting in a police cruiser at the scene of the arrest. Lockwood transported the defendant to the police barracks where the defendant was placed in a holding area. The defendant gave an oral statement, in which he admitted that he and Williams had been in the parking lot for the purpose of selling cocaine. Lockwood paraphrased the defendant's oral statement in writing. When the defendant related his version of the incident, he was not handcuffed and appeared to have no difficulty understanding Lockwood. Lockwood then read the written statement to the defendant and again advised him of his *Miranda* rights. The defendant did not ask any questions about the content of the statement, nor did he disagree with it. The defendant signed the statement.

The defendant's testimony regarding those events differed from that of Lockwood. The defendant testified that he had been beaten when he was apprehended at the Showcase Cinemas parking lot. The beating

[5] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

caused his face to swell, closing his left eye. As a result of the beating, the defendant claimed that he did not understand that the police wanted to take his statement. Further, he had no memory of being advised of his *Miranda* rights. He testified, however, that he already knew that he did not have to talk to the police and that anything he said could be used against him. He denied having read the statement, or having it read to him by someone else. The defendant also denied ever giving any of the information contained in the statement. He testified that he did not sign the statement, nor did he know how his signature got on the statement. He recalled signing only a paper "entitled Motor Vehicle Department." He testified that he signed this document only because Lockwood had told him it concerned the motor vehicle collision at the Showcase Cinemas. Later, on redirect, the defendant testified that he signed a blank piece of paper because Lockwood had told him that his statement was being recorded by video camera and that later Lockwood would fill in the paper from the statements on the videotape.

On the basis of this testimony, the trial court ruled that "given the totality of the circumstances, I will find that the state has met its burden of showing based on what was presented to me that Mr. Grant's statement was a voluntary statement given after being fully advised of all his constitutional rights and that he voluntarily, intentionally and intelligently waived those rights." The defendant claims that the trial court failed to address whether the evidence established that the confession was not " 'extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . .' " *Malloy* v. *Hogan,* 378 U.S. 1, 7, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964).

"[T]he use of an involuntary statement of a defendant in a criminal trial violates a defendant's right to

due process of law. . . . As a prerequisite to admissibility the state is required to prove, by a preponderance of the evidence, that under all the circumstances admissions by an accused were voluntarily made. *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972) . . . . *State* v. *Kane,* 218 Conn. 151, 160, 588 A.2d 179 (1991). Under the federal due process clause, however, the defendant must establish that his lack of voluntariness was the result of improper police activity. The measure of voluntariness [under the federal constitution] is whether a review of all the circumstances surrounding the elicitation of the statement reveals that the conduct of the law enforcement officials involved was such as to overbear the will of the accused to resist and bring about a statement not freely determined. *State* v. *Rosado,* [218 Conn. 239, 254–55, 588 A.2d 1066 (1991)]. A statement by the defendant that is the product of police coercion, therefore, may not be used by the state against that defendant. *Colorado* v. *Connelly,* 479 U.S. 157, 163–64, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *State* v. *Roman,* 224 Conn. 63, 69, 616 A.2d 266 (1992), cert. denied,    U.S.   , 113 S. Ct. 1868, 123 L. Ed. 2d 488 (1993)." (Citations omitted; internal quotation marks omitted.) *State* v. *Medina,* 228 Conn. 281, 293–94, 636 A.2d 351 (1993).

" 'This determination of voluntariness and admissibility, in the first instance, is a question of fact for the trial court to resolve in the exercise of a legal discretion in accordance with constitutional standards of due process. *State* v. *Derrico,* [181 Conn. 151, 162–63, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980)]. This, of course, includes decisions on questions of credibility presented to the trial court. *State* v. *McCarthy,* 197 Conn. 247, 258, 496 A.2d 513 (1985). "Though the question is ultimately factual, our usual deference to factfinding by the trial court is qualified on the question of voluntariness by the

necessity for an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding is supported by substantial evidence." *State* v. *Smith,* 200 Conn. 465, 478, 512 A.2d 189 (1986); *State* v. *Chung,* [202 Conn. 39, 54, 519 A.2d 1175 (1987)].' *State* v. *Schroff,* [206 Conn. 182, 195–96, 536 A.2d 952 (1988)]; see *State* v. *Barrett,* 205 Conn. 437, 451–52, 534 A.2d 219 (1987); *State* v. *DeAngelis,* [200 Conn. 224, 232–33, 511 A.2d 310 (1986)]." *State* v. *Madera,* 210 Conn. 22, 40, 554 A.2d 263 (1989).

Here, there was no credible evidence presented of police coercion, or of other improper police activity or conduct "to overbear the will of the accused to resist and bring about a statement not freely determined." *State* v. *Rosado,* supra, 255. In determining whether a defendant's will was overborne, the defendant's age, educational background, emotional state and prior experience with the criminal justice system are all relevant. See *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 226, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Here, the testimony revealed that the defendant had graduated from high school with honors and at the time of the arrest was employed as a postal worker, having scored well on the postal employment test. Additionally, the defendant testified that he knew that he did not have to talk to the police and that anything he said could be used against him.

Our review of the record demonstrates that the credible evidence contained therein more than adequately supports the trial court's determination that the defendant's statement was voluntary and that he intentionally and intelligently waived his *Miranda* rights. In the absence of credible evidence of any coercion, or other improper police activity, and in light of the testimony of Lockwood, we conclude that the trial court's admis-

sion of the defendant's statement did not violate the defendant's federal constitutional protection against self-incrimination.

The judgment is affirmed.

In this opinion the other judges concurred.